MRS. ELIZABETH CORDRAY SMITH ET AL. V.
UNITED GAS PIPE LINE COMPANY.

No. A-2345.  Decided March 8, 1950.
Rehearing overruled April 12, 1950.
(228 S. W., 2d Series, 139.)

*Jones, Jones & Brian,* and *Franklin Jones,* all of Marshall, and *Clifford Roe,* of Carthage, for petitioners.

The Court of Civil Appeals erred in reversing the judgment of the lower court because of its alleged failure to prepare and file bills of exception upon alleged disagreement of respondent with qualified bills. Wisdom v. Smith, 146 Texas 420, 209 S. W. 2d 164; Clayton v. Preston, 54 Texas 418; May v. Consolidated Underwriters, 170 S. W. 2d 295.

*Long & Armstrong,* of Carthage, *Vinson, Elkins, Weems & Francis, Earl A. Brown, Jr.,* and *Thomas Fletcher,* all of Houston, for respondent.

The Court of Civil Appeals did not reverse the judgment and remand the cause solely because of the court's failure to prepare and file bills of exception, but also upon the grounds that petitioners, having failed to object to respondent's bystanders' bill on argument of counsel within the thirty days after the filing of the record in the court of civil appeals, waived their claim of lack of proper authentication of said bill and the official court reporter's transcript of the argument should have been received as a sufficient bill of exception. City of Santa Anna v. Leach, 173 S. W. 2d 193; Pacific Fire Ins. Co. v. Smith, 145 Texas 482, 199 S. W. 2d 486; Smirl v. Globe Laboratories, 144 Texas 41, 188 S. W. 2d 676.

Mr. Justice Garwood delivered the opinion of the Court.

This controversy, as now before us, is a so-called new trial proceeding under Rule of Civil Procedure 329, by petitioners, Mr. and Mrs. Smith, who were defendants cited by publication and not personally appearing in the original proceeding. The latter was a suit by United Gas Pipe Line Company, respondent here, for partition of two tracts of twenty acres and one acre respectively and the minerals under both; the defendants being the six other co-owners, among whom petitioner, Mrs. Smith, held much the largest interest, which, however, was not greatly in excess of that held by the plaintiff company. All the defendant co-owners, except Mrs. Smith and Emma Ruth Cordray, were personally served, some appearing and some defaulting. The suit resulted in three separate partition sales in which the plaintiff—now respondent—became the purchaser of the total mineral estate of both tracts, the surface of the twenty-acre tract and that of the one-acre tract respectively. There was no appeal from this original judgment. In fact, before the new trial was sought by petitioners Smith, the receiver's sales had been confirmed, the deed to respondent delivered, and various of the defendant co-owners had accepted their respective shares of the sale proceeds. At the present time the other co-owners, except petitioners, have all accepted their portions, the last acceptance—that of B. Everett Cordray—occurring shortly after the trial in the new trial proceeding. In the latter, petitioners brought all these other original defendants back into court, but none of them apparently filed pleadings except the guardian ad litem of two minor defendants, who opposed petitioners' motion.

The grounds of the motion and ultimate relief sought were in substance that petitioners had no actual knowledge of the original suit; that in the latter, the property should have been partitioned in kind rather than by sale; that the $800 consideration received in the partition sale of the surface of the small tract (which had a small house on it) was grossly inadequate; that such tract with the house should be set apart to petitioner, Mrs. Smith, by adjustment of equities, etc. Over objection of respondent United, the trial judge withheld his ruling on the motion itself pending a trial to a jury on the merits, at the conclusion of which and upon findings in accord with the contentions of petitioners, he granted the motion for new trial and simultaneously rendered judgment on the merits, providing for (a) partition in kind of both the mineral and surface estate of the twenty acre tract, with appointment of commissioners, etc., and (b) partition by receiver's sale of both estates of the one-acre tract. Against objection of respondent, United, this action of the court in effect ordered a new partition as between all the co-owners, despite the fact that they had all accepted the fruits of the original judgment and sales, except petitioners and B. Everett Cordray, who, shortly after the second proceeding, cashed the check he had received for his portion some months previously in the original proceeding. The new judgment also taxed all partition expenses and other costs of the original proceeding as well as all costs of the instant proceeding against respondent United, and charged respondent also with certain taxes levied against the property and paid by the receiver in the original proceeding.

On appeal by respondent United, the Court of Civil Appeals reversed and remanded the case for a new trial. 222 S. W. 2d 310. While numerous errors were assigned, and some of them were discussed in the opinion below, the action of the court in ordering another trial was evidently based on the failure of the trial court to prepare and file its own bill of exception under Rule of Civil Procedure 372 (i) with respect to allegedly improper jury argument of counsel for petitioners. We granted the writ of error on this point, but will first dispose of another which was discussed first below and upon which respondent strongly relies to sustain the reversal of the trial court.

█ We agree with the Court of Civil Appeals that the trial court did not err in holding only the one hearing for the purpose of determining, with the aid of a jury, the two matters of whether the original judgment should be set aside and what new judgment should be rendered. In the more frequent type

of motion for new trial involving fact questions—for example, a motion at the same term based on alleged jury misconduct—the court, of course, conducts a special fact hearing before himself alone and resolves the matter. But a motion under Rule of Civil Procedure 329 is a considerably different matter, though the rule refers only to the "court" and stipulates only the general prerequisite of "good cause" in words which are also found in Rule 320 dealing with motions for new trial generally. "Good cause" as used in Rule 329 means for all practical purposes in the present case the same as "the existence of a meritorious defense". See Dennis v. McCasland, 128 Texas 266, 269, 97 S. W. 2d 684. Whether motions under Rule 329 (or those under its statutory predecessor, Art. 2236, Vernon's Annotated Civil Statutes) are essentially bills of review, as some decisions seem to suggest, or simply motions for new trial to be made during a permanent two-year court term extension, as this court has sometimes flatly stated them to be, we need not argue here, nor need we try to coordinate with our decision here decisons such as Cragin v. Henderson County Oil Development Co., Texas Com. App., 280 S. W. 554, which did not arise under Rule 329 or Art. 2236. Suffice it to say that, under the most recent holding of this court, in order to make good a contested motion under Rule 329, the defendant must not only allege under oath, but also prove that he has a meritorious defense. Commercial Credit Corporation v. Smith, 143 Texas 612, 187 S. W. 2d 363. This means that the defendant cannot escape from the original judgment against him without proving the very same defense which must also be established if he is to have a later judgment in his favor. Accordingly, the practice of having only one hearing or trial for the purposes of both the motion and the merits has been recognized in this state since at least as early as 1895, when the Court of Civil Appeals in Keator v. Case, 31 S. W. 1099, 1100, in effect instructed the trial court to follow it. Particularly under the now generally accepted obligation of bench and bar to seek judicial simplicity and economy, does it appear desirable to avoid trying the very same issue once before the judge and then again before the judge and jury. Brown v. Dutton, 38 Texas Civ. App. 294, 85 S. W. 454, does state that the defendant's motion or bill under a statute similar to Rule 329 is in effect a new suit both as to the merits and otherwise, so that an appeal therefrom would not require the appeal bond required in an appeal from the original judgment. But it did not hold that such new suit must in turn be divided into two hearings. In fact the court cited Keator v. Case, supra, with approval. See also Humphrey v. Harrell, Texas Com. App., 298 S. W. 2d 963, 965, stating that in a proceeding for relief from a default judgment rendered at a prior term, all issues involved

shall be determined in a single trial. Even should it be true that the single trial practice in cases such as here presented departs from a sound principle that the granting or refusal of new trials is a function peculiar to the judge, the departure would yet not be a great one, practically speaking, on account of the limited number of instances in which it can occur.

■ The question of improper argument of petitioners' counsel has given rise to numerous subsidiary questions of procedure. Respondent and the court below would have another trial because the trial court failed to prepare and file his own bill of exceptions, as trial courts are required by Rule 372(i) to do when complaining counsel refuses to accept the court's qualifications of the bill originally tendered by counsel. Petitioners answer that this point was waived by respondent's failure to assign it as error below (though respondent did clearly assign the basic question of improper argument) ; that the tendered bill with the court's qualifications thereon (which, incidentally, is not in the transcript) was itself the court's own bill under the Rule and that the court actually tendered such bill to respondent's counsel, who respectfully told the court in effect to do with it whatever the court might desire. Petitioners further say—and we think correctly—that respondent's "bystanders' bills" (included in the transcript) which the court below said it could not consider for lack of the court's own bill, were in fact not bystanders' bills at all, being merely affidavits of counsel, which could not be considered on appeal even had the trial court filed his own bill. In reply respondent says petitioners waived the alleged inadequacy of the bystanders' bills by failing to attack them within the period specified by Rule 404. Respondent also refers vigorously to the non-technical character of the Rules of Civil Procedure and here renews a motion unsuccessfully made in the Court of Civil Appeals under Rules 428 and 372(c) to bring up the official court reporter's record of the arguments complained of—such record being attached to the motion and appearing also in the so-called bystanders' bills in the transcript as well as in respondent's reply to petitioners' application for writ of error.

■ We think the court should have prepared and filed his bill even though, as stated, we also think the bystanders' bill, executed by counsel alone, was not a proper bystanders' bill within the meaning of the Rules. On the other hand, it seems obnoxious to common sense that respondent should have been required, as petitioners suggest, to assume sole responsibility for an obligation expressly placed upon the court itself, with the related

burden of procuring necessary writs from above when it should at some time or other appear that the court's duty would not be performed. We further consider, as stated, that despite Rule 372(c) the proper way to preserve objections to improper argument is by bill of exception rather than by bringing up the court reporter's record of the argument as a part of or supplement to the statement of facts described in Rule 371, unless counsel agree on the latter method. Under these circumstances, we believe it within our prerogatives to examine the "record" of the argument with a view to seeing whether, assuming the "record" to be a proper one, the argument yet presents reversible error, and if we find it does not, to dispose of this phase of the case accordingly. Proceeding thus, we have concluded that, while some parts of the argument were improper, the error, under all the circumstances, was not such as under Rules of Civil Procedure 434 and 503 to require a reversal of the case. See Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S. W. 2d 191, 193.

■ The principal objection to the argument was its attempted emphasis on the fact that, since petitioner, Mrs. Smith, did not appear in the original trial, she thus did not have "her day in court", according to the sacred traditions prevailing in Anglo-Saxon, though not in Soviet, jurisprudence, etc., etc. The point (even without the objectionable reference to Russia) was of no proper concern to the jury, and true only in a limited sense in any case, since petitoners did have an attorney ad litem in the original proceeding. However, both from the pleadings and evidence and wholly apart from the argument, the jury was well aware that Mrs. Smith had made no appearance in the original trial personally or through counsel of her own selection, so the argument was at most a suggestion to consider what they already knew and might have considered in any event. The prompt and vigorous objection of respondent's counsel, accompanied by a clear statement in the presence of the jury of the irrelevance of the argument to the issues, tended to clarify the matter so that a reasonably intelligent juror would see it in its true light. The admonition of the court to petitioners' counsel to "stay within the record", and his subsequent instruction after the argument for the jury to consider only the evidence, regardless of the argument, were indeed less than the situation deserved, but were in the nature of a disapproval of the argument and at least tended to offset any harmful effects it might have had. The other objectionable features of the argument were likewise, we think, insufficient to constitute reversible error under the circumstances. For this reason we conclude that the trial court's

failure to prepare and file his own bill of exceptions on the argument was not sufficient ground for reversal of the case.

■ Another point relates to the action of the trial court in ordering a new partition between all of the parties to the original proceeding, instead of between petitioners and respondent as successor of the others. What practical motive petitioners may have had to prefer the more complicated arrangement ordered does not appear. This action of the court was duly assigned as error below by respondent, and both parties seem to assume that the Court of Civil Appeals adopted respondent's position as a ground for reversing and remanding the case; petitioners raising the question here. We interpret the opinion below as merely directing that, if the next proceeding in the trial court should result in relief to petitioners, the decree should provide for a partition between petitioners and respondent United as sole co-owners of the properties in question. In any event, the principle of the ruling is sound.

The statement in Wiseman v. Cottingham, 107 Texas 68, 174 S. W. 281, that, "Under our practice the granting of a new trial upon the motion of one of several defendants vacates the judgment as to all of them," could not have been intended to apply to every situation that might arise. See Burton v. Roberson, 139 Texas 562, 164 S. W. 2d 524, 143 A. L. R. 1, and annotation 143 A. L. R. 7, 14. Departing from the old common law, we have ceased to regard a judgment as something—like a man's life—that cannot be destroyed in part without destroying the whole, and now resolve the problem of partial new trials on the basis of whether the limitation of the issues in the new trial is such as to be equitable to those concerned.

It is true that the issue of whether the properties were, generally speaking, capable of partition in kind was an essential one in both the original and revisory proceedings and in a sense affected all parties alike, as may also be said of the question of fair value of the one-acre tract (which petitioners say was ignored in the sale in the original proceedings). Moreover, as to the larger tract being capable of partition in kind, it seems that the issue in the revisory proceeding would have to be whether this was so as between all the parties (rather than simply between petitioners and respondent United), because that was the issue in the first proceeding as to which petitioners had to show a meritorious defense in the revisory proceeding. But, conceding all this, what practical purpose of justice is served by requiring that the decree in the later proceeding redivide property between the six or seven parties (rather than petition-

ers and respondent only), as if all the original defendant co-owners, except petitioner, Mrs. Smith, were complaining of the original division and had not accepted it as a final determination of their rights? This was what the Court of Civil Appeals evidently had in mind. Clearly, in the instant case, a decree treating petitioners and respondent United, for the purposes of the actual division of the property, as sole co-owners thereof, would not leave the decree open to attack by the other defendants, assuming the decree made the necessary reference to them and that they were all "in court"—as they are. Nor would such a procedure seem unjust to petitioners or the other original defendants. A partition decree involving a co-owner as a "defendant" is considerably different from, for example, a money judgment, against or for him. Even though it should erroneously call for partition by sale instead of partition in kind, such "defendant" is not necessarily injured in fact. The original defendants other than petitioners not only failed to attack the original partition at any time but, as stated, have all accepted the proceeds of the partition sales, thus indicating satisfaction therewith. Since their interests were very small, one can readily imagine that in the case of the twenty-acre tract, they might prefer to have such interests sold as part of that tract instead of receiving each a very small and perhaps irregular piece of land. One can also imagine that these parties might even disagree with the jury that the $800 proceeds from the sale of the one-acre tract was so inadequate that they would necessarily do better rather than worse on another sale. Petitioners themselves, obviously wanting a piece of land and corresponding mineral rights out of the larger tract, would naturally realize that object quite as satisfactorily from every standpoint in a division between two as in a division between many. As regards the smaller tract, which is to be sold as a unit, what difference can it make to petitioners—or to a purchaser—that the unit as offered for sale consists of two undivided halves rather than seven undivided sevenths? We see no practical reason why petitioners, with no legitimate interest of their own to serve thereby, should in effect be allowed to determine for non-complaining parties what is best for them. Such determination, as reflected in the existing decree, might actually result in burdening these defendants with ownership of small tracts (out of the twenty-acre tract) which they could not sell for as much as they would owe respondent United for what they have received from it as purchaser under the original partition sale of that tract. It could conceivably also result in their owing United in respect of the one-acre tract more than they would receive from the resale thereof. That a partition in kind or by sale between only two interests is less complicated and expensive than one among many

can hardly be denied. It also seems to be a hardship on respondent United, as purchaser under the original sale, to require it to follow the more complicated route (including an accounting with each of the several co-defendants over its payments already made to each) if no practical object of justice is to be served thereby.

Doubtless Wiseman v. Cottingham, supra, does establish that, where one of several defendants is personally served, defaults in the original proceedings and makes no complaint of the latter when brought into the revisory proceedings, such facts do not necessarily prevent his benefiting from revisory relief granted at the behest of a defendant cited by publication. But that decision does not appear to require what the trial court decreed in the instant case. In the Wiseman case the original judgment allowed the plaintiff as holder of the vendor's lien and superior title to rescind and recover land owned jointly by several defendants as heirs of T. A. Cottingham, including two who were cited by publication. The latter, within the statutory period and purporting to act for the benefit of all the defendants, sought a new trial and recovery of the land by tender of everything due under the note. The original plaintiff evidently took the position that she could in any event retain the interest of the defendants who were personally served and defaulted in the original proceeding, but this court rejected her contention in the language heretofore quoted. Thus the judgment avoided was one which probably entailed a real loss to all the defendants and the new judgment sought was one of very probable benefit to them. Moreover, to have allowed the defendants cited by publication to recover only their undivided interest while paying the full amount due under the note, or on the other hand to give those defendants all the land to the exclusion of the other defendants, would doubtless be inequitable. In the instant case petitioners demonstrate no legitimate interest in having the new partition include all the parties to the original proceeding, while the parties other than petitioners and respondent United might even lose, rather than benefit, from such procedure and evidently do not desire any part in it.

■ We also consider proper the holdings of the Court of Civil Appeals to the effect that respondent should not have been charged with taxes on the land paid by the receiver in the original proceedings and that all costs of the revisory proceedings, including those of any actual partition hereafter made, shall be taxed against respondent and petitioners in accordance with the values of their respective interests pursuant to Rule of Civil Procedure 778.

■ Our holding with reference to the matter of the argument of counsel for petitioners requires that the judgment of that court, reversing and remanding the case for a new trial for the trial court's failure to file its bill of exceptions, shall itself be reversed. However, the Court of Civil Appeals, by reason of its ruling on the point mentioned, pretermitted a number of additional assignments presented to it by respondent, including several which involve points within the exclusive jurisdiction of that court. Under such circumstances, our practice is to remand the case to the Court of Civil Appeals for consideration of all the assignments upon which it did not pass. Corzelius v. Oliver, 148 Texas 76, 220 S. W. 2d 632, 637.

The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for consideration of the assignments of error of respondent, United Gas Pipe Line Co., not heretofore passed upon.

Opinion delivered March 8, 1950.

Rehearing overruled April 12, 1950.