## WILSON v. TEXAS CRESOTING CO.

### No. 4945.

Court of Civil Appeals of Texas.

Beaumont.

April 29, 1954.

Rehearing Denied May 26, 1954.

Faver & Barnes, Jasper, for appellant.

Marcus & Weller, Beaumont, for appellee.

ANDERSON, Justice.

The parties will be referred to as in the trial court, the appellant, Elvin Wilson, as plaintiff, and the appellee, Texas Cresoting Company, as defendant. There were other parties to the suit, but it is not necessary that further notice be taken of them.

The plaintiff sued to recover damages for personal injuries which he sustained while unloading poles from a railroad flat-car. He alleged that the poles had been loaded in a negligent manner, and that this was the proximate cause of his injuries. The defendant was alleged to have been the loader and shipper of the poles. Trial to a jury resulted in a verdict in favor of the defendant, and in a judgment that the plaintiff take nothing by his suit.

The poles were consigned to Stone & Webster Engineering Corporation. They were to be used as piles, and were to be unloaded by the plaintiff's employer, Ole Peterson & Sons, Inc., a subcontractor under the consignee. The defendant was not alleged to have participated in or to have been responsible for unloading them.

There were approximately 32 poles in the particular load. Some of them were more than 70 feet long, and two flat cars were used for their transportation. The plaintiff's evidence was to the effect that the weight of the load was supported by one

car, and that the small ends of the poles were merely overhanging the other car. Before unloading operations were commenced, the poles were secured in place on the car by standards or small saplings which had been inserted in cuffs along the sides of the car, and by metal bands which encircled all of the poles. Wires had also been passed across the top of the load and around the standards so as to tie the standards on one side of the car to their opposite numbers on the other side of the car.

According to the plaintiff's version of the manner in which the poles were secured in place, there were only twelve standards on the car (six on each side—three at each end of the car), and all of the metal bands, of which there were some six or eight, extended around all of the poles together; no bands or wires extended through the load so as to secure the poles in place by separate tiers.

Preparatory to unloading the poles with a hoisting machine, the plaintiff climbed on top of the load, and with an axe cut all of the metal bands and wires by which the poles were secured in place. This left only the standards on the sides of the car to prevent lateral motion of the poles. He then walked out onto the end of a pole that jutted out some three or four feet beyond the ends of the other poles, placed a sling around the ends of three of the top poles, and, while still standing or squatting on the end of the pole he had walked out on, signalled for the operator of the hoisting machine to raise the ends of the three poles. These three poles were either brought into contact with the standards on one side of the car, or else their being lifted caused the remaining poles to shift their positions and exert greater pressure on the standards, just which is not made entirely clear by the evidence. In either event, the standards on one side of the car gave away, and the poles rolled to the ground, carrying the plaintiff with them. He was seriously injured by the fall and by being struck by the falling poles.

The plaintiff alleged that in loading the poles the defendant had been negligent (1) in placing too heavy a load on the car, (2) in failing to brace the load with a sufficient number of stakes along the sides of the car, (3) in using stakes along the sides of the car that were not strong enough to brace the load properly, (4) in only placing bands around the entire load of poles, and in not placing bands through the load between the several tiers of poles, (5) in failing to place wire across the car from stake to stake, between the tiers of poles, (6) and in failing to brace the stakes on the sides of the car by adequately wiring those on one side of the car to those on the opposite side.

In addition to a general denial, the defendant plead contributory negligence on the part of plaintiff as a proximate cause of the latter's injuries, and also that in the circumstances outlined by the defendant as having attended plaintiff's injuries, the plaintiff was precluded from recovering judgment by the rule of law which is expressed in the maxim, "volenti non fit injuria."

The jury found no negligence on the part of the defendant, and found that the plaintiff was guilty of negligence in each of the following respects: (1) in cutting all of the bands from around the poles without adding additional supports or braces to hold the poles in place; (2) in remaining on the poles after cutting all bands from around them; (3) in signalling for a part of the poles to be raised while he was still standing on one or more of them; (4) in remaining on the poles after all bands had been cut from around them, when he knew or in the exercise of ordinary care should have known that the supporting stakes were not strong enough to hold the poles in place while they were being unloaded; (5) in failing to get off the poles while a part of them were being lifted. Each act of negligence so found was found to be a proximate cause of plaintiff's injuries; and such injuries were found not to have been the result of an unavoidable accident.

Eleven points of alleged error are contained in appellant's brief; but as we understand the brief and the record, points eight through eleven are recognized by appellant

as being without proper support in the record, and are not insisted upon by him. The other seven points complain of rulings of the trial court by which certain evidence which the plaintiff sought to introduce was excluded, and of rulings which prevented plaintiff's counsel from cross-examining certain witnesses about certain matters.

Appellant's first five points complain of the exclusion of evidence which pertained to the same general subject matter. Points one, two, three, and five complain of the exclusion of certain testimony with reference to the manner in which other cars of similar poles, and one car in particular, had been loaded, and of the trial court's refusal to permit the witnesses to compare and contrast the manner in which those cars had been loaded and the manner in which the car from which plaintiff fell had been loaded. Point four complains of the trial court's refusal to admit into evidence the testimony of H. J. Boswell relative to the effect, from the standpoint of the safety of persons undertaking to unload the poles, which would have been produced by separating the tiers of poles by wires or bands, and by placing more and stronger stakes along the sides of the car.

Appellant's sixth and seventh points are as follows:

### Sixth Point

"The error of the trial court in refusing appellant the privilege of questioning appellee's leading witness, Carl Hillman, further about the changes in the rules, after he had testified on direct examination that the rules 'are not effective today. They have been changed.' "

### Seventh Point

"The error of the trial court in refusing to permit appellant to cross-question appellee's witness, Bruce Reese Brantner, relative to the witness's interpretation and use of rules that had been previously introduced in evidence by appellee."

The rules referred to in the foregoing points six and seven were the loading rules of the American Association of Railroads. Those rules, as they existed at the time plaintiff received his injuries, were introduced into evidence by the defendant, and evidence was then introduced to show that the subject car had been loaded in conformity with them. The jury found that the car was loaded in conformity with the rules, and that such manner of loading was not negligence.

Under numerous counter-points, the appellee has undertaken to show that under the established rules of evidence the excluded testimony was properly excluded; that if error was committed, it was harmless because substantially the same testimony was introduced from other sources and even by the same witnesses during the course of the trial; and that if error was committed, it was harmless because the trial court erred in not granting the defendant's motion for an instructed verdict.

Defendant's motion for an instructed verdict was predicated upon the theory that as a matter of law the evidence established that the plaintiff himself had been guilty of negligence which proximately caused his injuries, and upon the theory that as a matter of law the evidence made applicable the rule of law which is expressed in the maxim, "volenti non fit injuria."

We find it unnecessary to pass upon or to discuss these contentions of the appellee, or even to pass upon whether or not error was committed by the trial court in any of the respects charged by the appellant. Assuming, without deciding, that the trial court erred in each of the respects charged, such errors do not require a reversal of the trial court's judgment.

It is not necessary that we detail the testimony which appellant claims was erroneously excluded, or that we set out what he might have hoped to accomplish by further cross-examination of the witnesses mentioned in his sixth and seventh points. What we have already said makes it sufficiently clear that the excluded evidence could have been relevant only to the issues pertaining to the defendant's negligence, and could have had no bearing on the issues with reference to whether in doing or

failing to do certain things in the circumstances that actually existed, the plaintiff was himself guilty of negligence which proximately caused his injuries. If the defendant had been found negligent in all of the respects charged, and such negligence had been found to have been a proximate cause of plaintiff's injuries, the judgment in favor of the defendant would still have been required by the findings that the plaintiff was himself guilty of negligence which proximately caused his injuries. This being true, and since the excluded evidence was wholly irrelevant to the issues on which the judgment was based, its exclusion becomes immaterial and does not present reversible error. Gross v. Dallas Ry. & Terminal Co., Tex.Civ.App., 131 S.W.2d 113, Dism. Judgm.Cor.; Benson v. Weaver, Tex.Civ. App., 250 S.W.2d 770, affirmed, Tex.Sup., 254 S.W.2d 95; Connor v. Heard & Heard, Inc., Tex.Civ.App., 242 S.W.2d 205, writ ref. n.r.e.

No reversible error being presented, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

In his motion for rehearing the appellant complains that in its original opinion this court erred (1) "in making a finding that 'points eight through eleven * * * are not insisted upon by' the appellant," (2) "in denying appellant's motion, duly verified, to supplement the record by bringing up to the Court of Civil Appeals all of the arguments of counsel to the jury," (3) "in finding that if the trial court committed error in the respects charged by the appellant 'such errors do not require a reversal of the trial court's judgment,'" and (4) in holding that the errors charged by appellant "could have had no bearing on the issues with reference to whether in doing or failing to do certain things in the circumstances that actually existed the plaintiff was himself guilty of negligence which proximately caused his injuries."

The first assignment has reference to the following statement in the original opinion: "* * * but as we understand the brief and the record, points eight through eleven are recognized by appellant as being without proper support in the record, and are not insisted upon by him."

▮ Without debating the question of whether certain statements contained in appellant's brief and made by counsel during oral argument justified the conclusion which is evidenced by the quoted language, we now hold that appellant's points eight through eleven are without proper support in the record and cannot be considered on their merits. The points pertain to what are represented to have been rulings of the trial court whereby appellant's counsel were unduly and improperly restricted, it is claimed, in their arguments to the jury. The alleged rulings have not been presented by bills of exception, and do not appear in the record except as contained in appellant's amended motion for a new trial. It does not appear that any evidence was adduced in support of the motion for new trial. The court's order overruling the motion made no special mention of the assignments pertaining to rulings on the arguments of counsel; it merely overruled the motion generally. The order can in no sense be construed as a certificate by the trial court that the rulings assigned as error were actually made, nor has the trial court elsewhere certified that such rulings were made. In the absence of proof of record in some manner sanctioned by law and the rules of procedure that the rulings as claimed were in fact made, the assignments are not and have not been subject to be reviewed by us. See Rule 372, T.R.C.P.; 3-A Tex.Jur. 628, 642, 698, secs. 488, 489, 498, 542; Texas Employers' Ins. Ass'n v. Tate, Tex.Civ.App., 214 S.W.2d 877, 882, writ ref. n. r. e.; Hartford Accident & Indemnity Co. v. Ethridge, Tex.Civ.App., 149 S.W.2d 1040; Associated Employers Lloyds v. Wynn, Tex.Civ.App., 230 S.W. 2d 838. This is true even though the rulings, if made, may have been of such nature as to entitle the appellant to complain of them for the first time in his motion for a new trial. It is also true notwithstanding the assignments complain of what are represented to have been rulings of

the trial court, as distinguished from mere improper argument of opposing counsel.

We next consider appellant's assignment that this court erred in refusing to grant his motion to have the record supplemented by a transcript of all arguments made to the jury by counsel for both parties.

The motion, which was sworn to by one of appellant's attorneys, was filed on September 10, 1953. The transcript and statement of facts had been therefore filed on August 12, 1953, the time for such filing having been first extended by an order of this court for a period of thirty days from July 13, 1953. The motion represented, and it contained a copy of a letter to support the representation, that counsel for appellant had timely directed the official court reporter who reported the trial to incorporate all arguments to the jury in the statement of facts. The arguments were not so incorporated, and the motion represented that appellant's counsel failed to detect the omission until after the statement of facts had been approved and filed. No transcript of the arguments of counsel was tendered with the motion and none has since been tendered for filing in this court. Neither, so far as the record discloses, has such a transcript been filed or tendered for filing in the trial court. The motion prayed that the official court reporter of the trial court be ordered by this court "to transcribe and file with the clerk of the [trial court] her transcription of all arguments to the jury of all members of counsel for both parties to this suit," and that the clerk of the trial court be ordered "to certify and transmit to the clerk of the Court of Civil Appeals * * * all of said arguments of counsel." The motion was contested by the appellee. By order dated September 23, 1953, this court, without setting out its reasons for so doing, overruled the motion.

Disregarding the fact that the time for filing bills of exception in the trial court had long since expired when the motion under discussion was filed; and wholly aside from the question of whether, on the ex-parte motion of one of the parties to an appeal, an appellate court has the authority under Rule 428, T.R.C.P., to order a court reporter who has reported a trial in the trial court to transcribe his or her notes of the trial proceedings and file the transcript in the trial court, and the question of whether if they do possess such authority the appellant's motion in this instance was technically sufficient to invoke the exercise of it: for this court to have ordered the record supplemented as prayed would have been for it to order the doing of a futile thing. The transcript of the arguments and of the trial court's rulings in respect thereto, authenticated in no other manner than by the certificate of the official court reporter, which is the only authentication an order of the kind sought could well have contemplated, would not have been entitled to consideration either as a bill of exception or as a part of the statement of facts; and the reviewing court still would not have been at liberty to pass upon such rulings as might have been reflected by it. Hartford Accident & Indemnity Co. v. Ethridge, supra, 149 S.W.2d 1040; Associated Employers Lloyds v. Wynn, supra, 230 S.W.2d 838. See, also, Smith v. United Gas Pipe Line Co., 149 Tex. 69, 228 S.W.2d 139, 143. By contesting the appellant's motion, the appellee had registered its lack of consent to the proposed method of presenting the matters for review; and the fact alone that the order sought would not have aided either the appellant or this court is considered a sufficient reason for the court's having refused to grant appellant's motion.

While we feel that the original opinion makes sufficiently clear the fact that points eight through eleven in appellant's brief were not considered on their merits and were not taken into consideration by the court in disposing of the appeal, arguments advanced by appellant under the third and fourth assignments in his motion for rehearing leads us to state here that neither the enumerated points nor the assignments of error on which they were based were taken into consideration in disposing of

the appeal. Therefore, the statement, "Assuming, without deciding, that the trial court *erred in each of the respects charged*, such errors do not require a reversal of the trial court's judgment," which appears in the original opinion, was intended to have reference only to the seven points which were considered by the court, the points which pertained to the exclusion of evidence. It had no reference to any of the trial court's rulings on argument to the jury by counsel. Other expressions in the original opinion similar to the italicized portion of the quoted sentence, if there be such, are subject to the same construction and limitation. With this explanation we adhere to the views expressed in the original opinion.

The appellant's motion for rehearing is overruled.