Laura S. WIEBUSCH a/k/a Laura S.
Mulvaney, Appellant,

v.

Redge J. WIEBUSCH, Appellee.

No. 04–81–00301–CV.

Court of Appeals of Texas,
San Antonio.

June 23, 1982.

Stewart J. Alexander, San Antonio, for appellant.

Martha B. Tanner, San Antonio, for appellee.

Before KLINGEMAN, BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

The mother of the child appeals from the denial of her motion for new trial. She moved to set aside a default judgment modifying a divorce decree by appointment of the father as managing conservator of the boy born in 1975. Citation was by publica-

tion. Tex.R.Civ.P. 329 (Supp.1982).[1] The judgment named the mother as possessory conservator and ordered her to pay $150.00 per month child support. The mother contends a new trial should have been granted because: (1) the mother had no notice of the suit; and, (2) there was evidence to show meritorious defense to the suit.[2] We sustain the first contention and reverse the judgment. The parties were divorced in December 1978, but they continued disputes relating to custody of the child and visitation privileges. Both parties remarried, and the mother has since divorced that husband. The father was in the service during the several suits. The mother, at the time of the present trial, was training to be a nurse.

## NOTICE

Disagreeing over custody and visitation privileges, the parties were again in court on June 29, 1979. The trial judge directed the mother to relinquish the child on July 2nd for summer visitation. The evidence shows that she violated that order by leaving her home where she resided with her husband, Clay Mulvaney, and taking her son to her mother's house in California. On July 6, 1979, the father filed the motion to modify the decree. Tex.Family Code Ann. § 14.08(c), (d) (Supp.1982).

At the motion for new trial Captain Jose Castillo of the Bexar County Sheriff's office recounted the unsuccessful efforts of a deputy sheriff to serve citation on the mother. As custodian of the process records of that office, he read from his records, in part:

"7/17/79—He made the location and information was that ... subject ... had moved out of the State. On July 26 at 7:00 p. m. he went by again to make

another attempt to get further information I presume. On September 5 at 8:00 a. m. he went back and they told him, stated that she was out of town."

Counsel for the mother inquired whether an alternative method of service other than citation by publication was attempted, "such as delivery to someone else in the household ...." Castillo answered no.

On September 20, 1979, there was citation by publication. Sec. 11.09(d) of the Family Code, *supra*, provides, in pertinent part:

"Citation may be given by publication as in other civil cases to persons entitled to service of citation who cannot be notified by personal service or certified mail and to persons whose names are unknown. The notice shall be published one time...."

The statute then sets out a model form which, we are told, shall be sufficient as notice if given in substantially that form. The published citation in this case states, like the example, that "... the nature of which suit is a request to terminate the parent-child relationship...." Further it states:

"The court has authority in this suit to enter any judgment or decree in the child's interest which will be binding upon you, including the termination of the parent-child relationship, the determination of paternity and the appointment of a conservator with authority to consent to the child's adoption...."

Of course, the purpose of the present suit was not to terminate the parent-child relationship, but was to modify conservatorship.

█ The requirements of § 11.09(d) of the Family Code, *supra*, comport with those of Tex.R.Civ.P. 114 (Vernon 1979), which

1. Tex.R.Civ.P. 329(a) states:

In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by attorney of his own selection:

(a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was signed. The parties adversely interested in such judgment shall be cited as in other cases.

2. Under Rule 329 the defendant must show 'good cause' in order to be entitled to a new trial. The two elements of good cause are lack of actual knowledge of the suit prior to rendition of the judgment and a meritorious defense. *McCarthy v. Jesperson*, 527 S.W.2d 825, 826 (Tex.Civ.App.—El Paso 1975, no writ). *See Smith v. United Gas Pipe Line Co.*, 149 Tex. 69, 228 S.W.2d 139 (1950).

mandates that, in addition to certain other matters, the citation by publication *shall* contain "a brief statement of the nature of the suit." Thus, notice of the nature of the suit is essential to a valid citation by publication.

 Since authority for citation by publication comes solely from the statutes, enactments authorizing the mode of service are strictly construed; and when a statute provides for constructive service in a given case, the method prescribed is exclusive and admits of no substitute. *South Texas Development Co. v. Martwick*, 328 S.W.2d 230, 232 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.) (citations omitted.) There is no procedure in Texas for a default judgment when service is by publication. *McCarthy v. Jesperson*, 527 S.W.2d 825 (Tex.Civ.App.—El Paso 1975, no writ). Therefore, the courts will apply the usual rules applicable to default judgment cases. *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965). It was stated in *Sgitcovich v. Sgitcovich*, 150 Tex. 398, 241 S.W.2d 142 (1951) *cert. denied* 342 U.S. 903, 72 S.Ct. 291, 96 L.Ed.2d 576:

> "In providing for substituted or constructive service on individuals, a statute must incorporate provisions reasonably designed to give the defendant notice of the initiation of litigation against him or a reasonable method of imparting such notice, otherwise it is not consistent with the requirements of due process of law. To dispense with personal service, the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done." *See, Forney v. Jorrie*, 511 S.W.2d 379 (Tex.Civ.App.—San Antonio 1974, writ ref'd n. r. e.).

The motion for new trial is a direct attack upon the default judgment, and this court will not, therefore, indulge any presumptions in support of the judgment's validity, as with a collateral attack. *McKanna v. Edgar, supra* at 929 (Tex.1965). The re-

viewing court may determine whether there is error apparent on the face of the record which vitiates the trial court's judgment. *Flynt v. City of Kingsville*, 125 Tex. 510, 82 S.W.2d 934 (1935). The citation for publication in the present case fails to reflect strict compliance with the statute authorizing substituted service. *McKanna v. Edgar, supra, Light v. Verrups*, 580 S.W.2d 157, 159 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

Moreover, even if we disregard the conflicting testimony regarding knowledge of the mother's whereabouts, there is still the deputy sheriff's evidence that someone was at the mother's residence on at least three separate occasions during the period from July to September. *See* Tex.R.Civ.P. 106.[3]

 A judgment by default without proper service of citation is void. *Flynt v. City of Kingsville, supra* at 934. On direct attack, although the judgment may recite proper service on the defendant, the usual presumption of service because of that recital does not obtain when the record does not show service. On an appeal from a default judgment the record must show an appearance by the defendant or due service of citation independent of the recitals. *Flynt v. City of Kingsville, supra* at 935.

 We hold that the record on its face does not show due service of citation. Therefore, we need not determine "good cause", actual knowledge of the suit and a meritorious defense, (Rule 329), because that test applies only after there has been a valid citation by publication.

The judgment is reversed and remanded.

---

**3.** To support the citation by publication, the father's own affidavit dated September 14, 1979, showed that the husband lived in the house:

.... In addition, when I have gone near the premises, I have been attacked by one Clayton Mulvaney and advised that I was never to go on or about the premises at 602 Holmgreen, San Antonio, Texas.