**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**David H. RHODEN, Jr., Appellee.**

**No. 13183.**

Court of Civil Appeals of Texas.

Houston.

Feb. 6, 1958.

Supplemental Opinion Feb. 13, 1958.

Rehearing Denied March 6, 1958.

Carroll R. Graham, Howard S. Hoover, Houston, Hutcheson, Taliaferro & Hutcheson; Woodul, Arterbury & Wren, Houston, of counsel, for appellant.

Helm, Jones, McDermott & Pletcher; Shirley M. Helm, Albert P. Jones, Houston, for appellee.

WERLEIN, Justice.

Appellee, David H. Rhoden, Jr., filed this suit under the provisions of the Federal Employers' Liability Act (45 U.S.C.A. Sec. 51 et seq.), seeking to recover damages for personal injuries sustained by him on or about January 28, 1954, while in the employ of Guy A. Thompson, Trustee, Beaumont, Sour Lake & Western Railway Company. Prior to the cause coming on for trial on March 12, 1957, the Missouri Pacific Railroad Company assumed all of the assets and liabilities of the defendant, Guy A. Thompson, Trustee, and was substituted as party-defendant.

Appellee alleged and offered proof showing that on the day of his injury, he was working in the course of his employment as a machinist at appellant's yards preparing a locomotive for service. Needing an air bell ringer to go on the locomotive so that it might be used that morning, he went to the Diesel Shop in order to remove one from an engine that was in the shop for repairs. He walked up the ramp and stepped into the cab of Engine No. 4287 with his right foot. He undertook to take a second step and his left foot went into a hole about two feet deep in the floor of the cab caused by the removal of one or more of the floor boards covering the air equipment, thereby causing him the injuries of which he complains.

The case was tried to a jury and in the verdict returned in response to special issues submitted in the charge, the jury found that at the time of the incident in question there was a custom on the part of appellant and its employees to give a warning when a floor board was removed from the cab of an engine, and that appellant knew of such custom or should have known of such custom in the exercise of ordinary care; that the appellant failed

to give appellee any warning of the removal of the floor boards, and such failure was negligence and a proximate cause of appellee's injuries; that appellant failed to place any sign near the entrance to the cab indicating the floor boards had been removed and that such failure was negligence and a proximate cause of appellee's injuries; that appellee failed to look where he was stepping at the time and on the occasion in question, and failed to use his flashlight, but such failure was not negligence. The jury found that appellee had been damaged in the sum of $75,000 for physical pain and mental suffering and anguish, past and future, and for loss of earnings and diminished earning capacity in the future.

The trial court rendered judgment for appellee against appellant for $75,000, less $1,334.96, which the parties had stipulated appellee had been paid in benefits by the Railroad Retirement Board. After appellant's amended motion for new trial was overruled, it perfected its appeal, and the cause is now before this Court for review.

Appellant's first and second points of error are to the effect, respectively, that (a) there was no evidence to raise or support any issues of negligence on the part of appellant and that the court erred in overruling its motion for an instructed verdict, and (b) the court erred in refusing to set aside the answers of the jury convicting appellant of negligence proximately causing appellee's injuries because such answers were against the great weight and preponderance of the evidence.

We are of the opinion there was ample evidence to support the jury's findings. Since this suit was brought under the provisions of the Federal Employers' Liability Act, the test of what constitutes negligence and the sufficiency of the evidence is to be determined by applicable Federal decisions.

Upon submission of the cause in this Court, appellant did not undertake to argue its Points 1 and 2 in view of the recent decision of the United States Supreme Court in the case of Gibson v. Thompson, 355 U.S. 18, 78 S.Ct. 2, at page 3, 2 L.Ed.2d 1, and other late decisions of that Court. For further reference to the controlling authorities, see Missouri-Pacific Railroad Company v. Prejean, 307 S.W.2d 284, recently decided by this Court. Appellant's Points of Error 1 and 2 are overruled.

Appellant's third and fourth Points of Error, which are also overruled, are to the effect that the trial court erred in submitting Special Issue No. 9 to the jury inquiring whether the failure of appellee to look where he was stepping on the occasion in question was negligence for the reason such issue was not raised by the evidence, and the trial court erred in refusing to set aside the answer to the same and to grant a new trial because the answer of the jury to said Issue was so against the great weight and preponderance of the evidence as to be manifestly wrong.

The evidence adduced showed that the hole in the cab floor was not plainly visible and that some other employees did not notice the floor boards were up, when they went into the cab to work. Klodginski testified that if the hole had been easy to see he would have seen it prior to the time Rhoden stepped into it. He also testified that a man would not normally expect the floor boards to be taken up, and that anyone could have fallen into the hole. Appellee testified that he was not in a position to see that the floor boards were up before he stepped into the cab. There was testimony that the lights were not on in the engine and that it would take some time for one's eyes to become adjusted to the dim light of the cab after stepping therein, and that it was customary that someone be placed at the hole to warn anyone entering that the boards had been removed. Appellee knew of this custom and had a right to rely upon it. On this occasion no warning of any kind was given.

We think the answer of the jury to Special Issue No. 9 is supported by

the testimony and is certainly not against the great weight and preponderance of the evidence. Whether or not a plaintiff has exercised due care is ordinarily a question of fact for the jury. See Tidy Didy Wash v. Barnett, Tex.Civ.App., 246 S.W.2d 303, ref., n. r. e.

Appellant relies on the case, among others, of Wetherbee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 1951, 191 F.2d 302. In that case, Wetherbee was riding at the end of a string of cars which was being moved. He was required, under a company rule, to keep a sharp lookout. Had he properly performed his duty, he would have seen the board alongside the track, and could have taken steps for his own safety. In the instant case, appellee's primary duty was to get the bell ringer in the cab—not to keep a sharp lookout for hazards created by appellant's negligence. He had a right, under the facts of this case, to assume that the floor boards were in place since no guard had been posted and no warning had been given. He was intent upon his job and was looking at the bell ringer as he took the step forward, placing his left foot in the unguarded hole.

Appellant, in its fifth and sixth Points of Error, contends that appellee's counsel made improper, harmful and prejudicial arguments to the jury. Following are the arguments complained of:

"He is out there today, and this is his only day in Court. You will be gone, and forget about this case when it is over with, and when you have written your verdict in the indelible records of the 80th Judicial District Court of Harris County, but he will go on, but he won't go on on that job at the railroad. When this lawsuit is over, he will be through, and you know it as well as I do, and you can't blame the railroad. They can't carry on a business with crippled people—"

Mr. Hoover: "I want to object to that. There is absolutely no evidence in the case whatsoever that would substantiate that."

Mr. Helm: "All right. I withdraw it, and apologize." * * *

"It is up to you folks. It is up to you folks to draw that deduction, or any deduction from the facts you will find in the Supreme Court, or the facts in this case, or any other lawsuit tried in Texas. It is your duty and your privilege to decide those matters, not mine, nor Howard Hoover's, and not the Court's, but your own."

* * * * * *

"Howard says he might retire. Well, those old fellows eighty and eighty-five years old, and you see their pictures in the paper all the time, pull those heavy passenger trains, those Continental Limiteds. They get the biggest and finest trains that they have, and they are eight-five years old, and always put the pictures in the newspapers, and they must be proud of it, so, why say a machinist working around engines and falling in open holes, and stuff like that, when he ought to be looking down here, and all that business, why say he is going to retire, and not work until eighty-five too if he could have lasted that long? Well, let's just be fair about those arguments. What is good for the goose is good for the gander."

■■ With reference to the first argument complained of, it will be noted that counsel for appellant objected and that thereupon counsel for appellee withdrew the same and apologized. The court was not requested to make a ruling with respect thereto and did not do so. As to the second argument, there was no objection made by appellant's counsel. Therefore, appellant is in no position to complain concerning such arguments unless they are of such nature that they could not have been cured by instructions from the court. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

In connection with the first argument it should be noted that there had been a great deal of testimony introduced showing the nature and seriousness of appellee's injuries and from such testimony the jury might have concluded that the appellee would be unable to work much longer. According to the testimony of the doctors, it was questionable whether appellee would be able to do any heavy work. Thus, the record suggested the possibility that Rhoden might not be able to continue on his job. Moreover, counsel for appellant had argued that he did not know how long Mr. Rhoden would choose to work, that there was nothing to indicate that he was going to do anything other than work for a good many years. These comments made by counsel for appellant were calculated to provoke a reply from appellee's counsel to the effect that Rhoden was staying on his job despite pain and discomfort, and might not be able to remain on the job for much longer after the trial. There was no effort made to inflame the minds of the jury against the appellant, and it was stated by counsel that he did not blame the railroad because it could not run its business with crippled people. See J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786, ref., n. r. e. See also 41B Tex.Jur., p. 276.

The second argument complained of was to the effect that old fellows eighty to eighty-five years old were operating heavy passenger trains. Appellee had testified, without objection being made, that he had seen engineers up to eighty years of age engaged in operating some of the best trains of the railroad. In his argument, counsel for appellant suggested that Rhoden might retire or he might die, and that the fact he had a life expectancy of twenty years didn't mean he would work twenty years. Thus, counsel for appellant undertook to minimize the longevity of appellee. It is true, there was no testimony that appellee had seen engineers as old as 85. We feel that this slight exaggeration was not a serious misstatement of the evidence.

The arguments made by counsel for appellee were more in the nature of deductions or inferences from the evidence and comments upon the evidence than statements of fact. Certainly, we cannot say that such arguments were reasonably calculated to cause, and probably did cause, prejudice on the part of the jury. We have concluded that the arguments of counsel for appellee, if improper, were not of such character that their harmful effect could not have been eliminated by instructions from the trial judge. See Ramirez v. Acker, supra.

Appellant's fifth and sixth Points are overruled.

Appellant's seventh Point of Error is to the effect that the court erred in overruling appellant's motion for new trial for the reason that the amount of damages awarded by the jury in the sum of $75,000 is grossly excessive, by at least $45,000 and in the alternative, that the court should require a remittitur to be filed in that amount.

Appellee testified that upon stepping into the hole in the cab floor on the occasion in question, his left leg and chest were hurt and he felt pain all over and was hurting "plumb through his chest and his hip." At that time he was 50 years of age, with a normal life expectancy of 21.37 years. He had worked continuously for the appellant since November 27, 1927. He testified that he had been a man in good physical shape and had to be to hold down his job as a machinist. He continued on the job until about 3 o'clock that afternoon, when he reported to the Houston Clinic for examination. At this time, according to Dr. Thorning, he was complaining only of injury to his left leg. Appellant testified, however, that he was hurting also through his chest and his hip. He did not complain of his back. An x-ray was taken of his left knee and it showed no broken bones. The diagnosis was that his left knee was strained and that there were also some hypertrophic changes in his spine. He was given a supporting bandage and

was requested to use heat locally. He went back on the job but sat around there for about 20 days. He further testified that he was given a return-to-work order on February 16, 1954. Dr. Thorning saw him again on June 23, 1954, and he was complaining of pain in his left chest. An x-ray showed a long-standing pleural thickening on the left with elevation of the diaphragm, with an inflammatory process of the covering of the lungs, which may have resulted, according to the doctor, from infection or injury, or not necessarily from either.

Appellee testified that although he had been suffering from pain, he stayed on his job until February 18, 1955. By that time he was suffering excruciating pain in his back, his right leg seemed to become paralyzed, and it was necessary for physicians to administer narcotics to him from February 18, 1955, until about thirty days after his disc operation which was performed on March 16, 1955. Some time after his operation he went back to work on a bench job, which was given to him because he was the second man in seniority. He testified that it was punishment to go out there and work; that he could work until about 10 o'clock in the morning and then his back would start hurting. His chest had given him a lot of trouble, but his leg had cleared up. Apparently his chest had also ceased to bother him as he did not complain at the trial of any present trouble or pain in his chest.

He testified he had back trouble all the rest of 1954, but it did not get to be severe until in December of that year. He further testified that he could feel weather changes and still had pain in his back, although the operation relieved some of the pain. He further testified he did not have control over his legs as he did before he was injured and that it was hard for him to get up and down stairs, and that he lacked coordination to guide his legs properly, and that his pain was not getting any less. He testified that after a day's work, particularly after

standing a long time, he had to use a heating pad at bedtime for about an hour before he could get comfortable and go to sleep.

Dr. Thorning testified that appellee had an essentially normal back and spine in 1953, and that he had made an uneventful recovery so far as he knew from the 1953 injury, which, of course, was prior to the injury in question. While stating that his records indicated that the only complaint appellee made on January 28, 1954, was about his knee, Dr. Thorning admitted that he had knowledge that Rhoden was having back trouble, and he stated that a person could have an injury and the acute signs or a ruptured disc not manifest themselves for some months. In answering a hypothetical question, he stated that in his opinion the injury or accident of January 28, 1954, brought about the necessity for the disc operation a year later, and that appellee was not fit candidate for heavy work if he still had back pain and stiffness a year after the operation, and that he might consider appellee permanently disabled if the symptoms persisted for a year.

Dr. Bruce Cameron saw appellee on April 28, 1955, when he was about six weeks postoperative. In his opinion, a patient with a successful spinal operation usually had about 20% permanent partial disability of general physical efficiency. He further testified that he had seen very few who had such an operation able to return and do heavy labor again. Medically speaking, the disability is about 20%, but it is greater with laborers doing heavy work, and a person with a fusion cannot go back and do real heavy labor, such as prolonged bending, lifting, stooping, picking up heavy loads, and such as that.

Dr. Geo. H. Lane testified he first saw appellee in August of 1955. On October 11, 1955, he recommended to the Railroad that Rhoden be permitted to go back to bench work, but no heavy work. On November 8, 1955, appellee had been back at

work about three weeks and was still complaining of pains in his back and cramps in his legs. In his opinion, a 20% general deficiency disability had resulted from the operation. This witness testified that appellee had reached his maximum recovery on May 22, 1956, and had an estimated disability of 20% permanent. The doctor also testified that pain can be partially disabling to a man doing heavy labor.

There was testimony that appellee went back to work on October 17, 1955, as a machinist, cleaning air brake equipment and doing bench work. At the time of his injury appellee was making $1.96 to $2.03 per hour, but at the time of the trial he was making $2.28 per hour, there having been an over-all raise in machinists' pay. Appellee's lost time, as a result of the injury, amounted to $2,751.32.

In view of the size of the verdict in this case, we have given the foregoing summary of the evidence relating to the extent and nature of the injuries sustained by appellee, his physical and mental pain and anguish, both past and future, as well as his loss of earnings to the date of the trial and loss of earning capacity in the future.

■ We do not believe that the jury's verdict awarding appellee the sum of $75,-000 is so grossly excessive that it manifests such passion or prejudice on the part of the jury as would require a reversal of the case. Appellant further contends, however, that the verdict is so excessive that a remittitur should be required. Both appellant and appellee cite the case of Port Terminal Railroad Association v. Noland, Tex. Civ.App.1956, 288 S.W.2d 276, writ refused, n. r. e., in which this Court required a remittitur of $30,000 on a $79,400 judgment. Appellant cites this case as a precedent for requiring a remittitur in the instant case, and appellee cites such case as a precedent for permitting large judgments to stand although based mainly on pain and suffering. It is true that the court in the Noland case stated that the verdict, with the exception

of some four months lost earnings, was sustainable, if at all, upon the theory that it represented compensation for past and future pain and suffering. The Court further showed, however, that Miss Noland had sustained very serious injuries, in part permanent. She was a typist, 34 years of age, earning $275 per month. She could not close her right hand nor hit certain keys on her typewriter with her right hand, as a result of the injury. Her pelvic area ached and pained at times. She limped when sore, and had an awful looking scar on her right leg. These injuries and especially the injury to her right hand probably diminished her earning capacity although she continued to hold down her former job without diminution in pay.

Appellee relies heavily upon Thompson v. Barnes, 236 S.W.2d 656, in which this Court affirmed a judgment entered upon a verdict of $85,000 in the case of a 53 year old conductor who was earning for some months prior to his injury an average of $563. Barnes was injured February 2, 1949. His case was tried a year later. There was testimony, as appears from the record on file in this Court, that up to the time of trial he had not gone back to work and that he could not perform the duties of a conductor; that he had suffered a ruptured intervertebral disc between the second and third lumbar vertebrae, with the throwing off of "bony proliferation" around the space between the second and third lumbar and around the space between the eleventh and twelfth dorsal vertebrae, and that there was an aggravation of an arthritic condition. There was also testimony that he could not do anything in the way of work; that if he undertook to do yard work, or housework such as mopping, he could not do it because his back gave out; that he suffered pain all the time and medicine gave only temporary relief; that his injury and the resulting pain kept him from sleeping and changed his disposition; that his pain and injury caused him to limp; that his leg felt numb at times, his toes felt like there were needles sticking in them; that the pain

in his back was like that of a toothache. After his injury, his wife had to work to provide a living for the family.

We feel the court properly entered judgment on the verdict of the jury in the Barnes case in view of the fact that in addition to the pain he suffered, the plaintiff was apparently permanently and totally incapacitated for the kind of work he had been doing, and would probably be unable to procure any remunerative employment in the future.

In the case of Thompson v. Robbins, Tex. Civ.App., 297 S.W.2d 247, affirmed, Tex., 304 S.W.2d 111, a judgment based upon a verdict for the plaintiff for $75,000 was affirmed in the case of a 56 year old brakeman with a life expectancy of 17.1 years, earning and capable of earning $6,000 per year, who was totally and permanently disabled for work.

In the case of Gillette Motor Transport Company v. Whitfield, Tex.Civ.App., 197 S.W.2d 157, affirmed 145 Tex. 571, 200 S. W.2d 624, an award of $44,000 to a brakeman on a railroad for very serious injuries was held excessive and a remittitur of $12,500 was required.

If, in the instant case, appellee had sustained permanent and total incapacity so that he could not engage in manual labor or procure remunerative employment, a verdict of $75,000 would not be considered by this Court to be excessive. Appellee, however, lost only $2,751.32 as a result of his injuries, and the testimony shows that while he continues to suffer pain when he stands too long or undertakes to work throughout the day, he still is able to work although he might not be able to do heavy labor. He has been working as a machinist, performing the lighter duties of that craft both before and after his operation, and was so working at the time of the trial in March, 1957, more than three years after his injury and approximately two years after his operation. The testimony does not indicate that appellee is permanently and totally incapacitated for labor, but rather that he is incapacitated 20% as applied to his general efficiency.

It is difficult to appraise another's pain and suffering. As stated in Port Terminal Railroad Association v. Noland, supra [288 S.W.2d 283]:

"There is almost no yardstick which may be employed which will remove the decision from the realm of pure subjective thinking. The only objective approach to the problem of which this Court is aware is that of comparing the award made with those which have been approved by other courts in comparable litigation."

In the case of Kimbriel Produce Co., Inc., v. Webster, Tex.Civ.App., 185 S.W.2d 198, 202, writ ref., w. m., Associate Justice Norvell said:

"The record of the evidence here undoubtedly supports the award of a large sum of money as damages. The determination of the amount rests primarily with the jury, and there is no set formula applicable to cases of this character whereby the exact amount can be measured or ascertained. The amount of the award is not, however, free from control or revision by either the trial court or this Court. 'The doctrine is now generally accepted that the verdict of the jury is subject to the supervision of the court whether such verdict is too large or too small.' 15 Am.Jur. 620. 'Precedents are helpful and of some value in determining whether damages awarded for similar personal injuries are or are not excessive or inadequate,' 25 C.J.S. Damages, § 198, p. 914, although it be conceded that no two injuries are alike in all particulars and do not have the same consequences or results insofar as damages are concerned. It is recognized that 'there should be a reasona-

ble uniformity as to the amount of verdicts and judgments in the various cases.' McNatt v. Wabash Ry. Co., 341 Mo. 516, 108 S.W.2d 33, 43."

■ After a study of many cases and a careful weighing of the testimony in the present case, conceding the severity of appellee's injuries, his partial disability, and the pain and suffering which he has endured and will probably endure in the future, and treating the evidence in the light most favorable to appellee, we have concluded that the verdict of $75,000 awarded him by the jury exceeds a fair appraisal and estimate of the damages sustained by him, and is excessive in the sum of $15,000.

If appellee will file in this Court a remittitur of $15,000 on or before February 24, 1958, the judgment of the trial court will be reformed accordingly, and, as reformed, will be affirmed; otherwise the judgment of the trial court will be reversed and the cause will be remanded for a new trial.

### Supplemental Opinion

On February 6, 1958, we indicated by an opinion in writing that if appellee would file a remittitur of $15,000 on or before February 24, 1958, the judgment of the trial court would be reformed and, as reformed, would be affirmed; and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellee has filed the suggested remittitur of $15,000.

■ Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $15,000 from the judgment recovered by appellee, and, as so reformed, is affirmed.

One-fifth of the costs of the present appeal will be taxed against appellee, David H. Rhoden, Jr., and four-fifths against appellant, Missouri Pacific Railroad Company.

Motion for rehearing may be filed by either party within fifteen days after this date.