Vester MIKELL et al., Appellants.

v.

C. A. LA BETH, Appellee.

No. 13634.

Court of Civil Appeals of Texas.

Houston.

March 16, 1961.

Rehearing Denied April 6, 1961.

W. O. Calhoun, Freeport, and Wyatt H. Heard, Houston, and Baker, Botts, Andrews & Shepherd, Houston, of counsel, for appellants.

Kenneth Bing, Freeport, and Bill Allen and W. James Kronzer, Houston, Hill, Brown, Kronzer & Abraham, Houston, of counsel, for appellee.

WERLEIN, Justice.

This case involves an intersection collision between two vehicles, one operated by appellant, Vester Mikell, and the other by appellee. The collision occurred about 10:30 p. m. on September 29, 1958 in Brazoria County. Appellee was traveling east on Styrene Road, which is a service road to the Dow Plant, and appellant Mikell was traveling south on State Highway 288, which is a four lane highway between Angleton and Freeport, Texas. Styrene Road deadends at Highway 288, and the inter-

section is controlled by traffic lights. The light remains green for traffic going south on Highway 288 until a vehicle on Styrene Road hits a trip plate and shortly thereafter receives the green light. Appellee alleges that he had a green light at the time of the accident while appellant Mikell testified that he had the green light.

The Trial Court entered judgment for appellee on the jury verdict in the sum of $22,788, which included $788 for medical services and treatment to date of trial and $2,000 for medical services and treatment in the future.

Appellants first complain that the Trial Court erred in not granting their first motion for a continuance because of the absence of two material witnesses, Paul Comeaux and Patrick Comeaux. The motion substantially complies with Rule 252, Texas Rules of Civil Procedure, and states what both witnesses would testify, and that they were the only witnesses appellants had other than themselves, on the liability issues in the case. It also states that Paul Comeaux would testify that Mikell did not violate the traffic light at the intersection but that appellee entered the intersection when the light facing him was red. The motion further asserts as a ground for continuance the fact that appellee filed an amended pleading on the eve of trial increasing the amount of damages prayed for from $37,500 to $65,000, and such amendment constituted surprise.

The question before us is whether the Trial Court abused its discretion in overruling appellants' motion for continuance. It becomes necessary, therefore, to review the sequence of events leading up to the filing of the motion. The evidence shows that the Comeaux brothers were known by appellants to be engaged in the shrimping business, and that appellant Mikell had such brothers with him in his car at the time of the collision for the purpose of selling some of his employer's products to them. They were not employees of appellant, and so far as the record reflects they were in no way connected with or obligated to appellants. The suit was filed December 13, 1958 and had been set on at least two occasions prior to the setting on October 19, 1959. It was the first case on the docket for the week of October 19, and such fact had been known to counsel for appellants for some time. When the cause was called for trial, the first announcement made by appellants was "not ready" because of the absence of appellants' leading counsel who was understood to be engaged in a trial in Houston, but who was able to make arrangements and be present later during the day. Shortly after suggesting such absence, appellants brought to the attention of the court the unavailability of the Comeaux brothers. The motion for continuance was not filed until 2:05 p. m. on the day the case was set for trial, soon after appellants' leading counsel brought it from Houston.

We quote paragraph III of the motion:

"Your defendants have shown due diligence in attempting to secure the testimony of Paul Comeaux and Patrick Comeaux. In this connection, defendants would show that shortly after the occurrence made the basis of this suit, both Paul Comeaux and Patrick Comeaux were contacted and voluntarily gave statements as to their knowledge of the accident in question. Being residents of Brazoria County, they indicated their willingness to appear voluntarily and give their testimony in person before the jury trying this case. Since they were residents of Brazoria County, and had lived in Freeport, Texas, for some time, defendants relied upon their cooperation and anticipated no difficulty in having them appear and give their testimony personally before the jury. However, in order to make certain of their availability, the defendants, on October 15, 1959, issued subpoenas for Paul Comeaux and Patrick Comeaux to appear for the trial of this case set for October 19, 1959. Thereupon, defendants

discovered for the first time that the two witnesses, Paul Comeaux and Patrick Comeaux, had absented themselves from the County and are temporarily on a shrimp boat working somewhere in the Gulf of Mexico. They are not expected to return for a period of a few weeks and, accordingly, are not available to the defendants so that their testimony can be presented upon this trial. Further, it is the information of your defendants that neither Paul Comeaux or Patrick Comeaux can be contacted by radio or telephone to alert them in regard to this trial and to secure their testimony. Thus, defendants, if forced to trial at this time, will be without the benefit of their two principal eye witnesses on the liability issues in this case. Defendants expect to have the testimony of these witnesses, either in person or upon deposition, upon the trial of this case at the next term of court."

The evidence shows that appellants, although they knew that the Comeaux brothers were engaged in the shrimping business, did not issue a subpoena for them until Thursday, October 15, 1959, and that the sheriff's return dated October 17, 1959 stated, "Both witnesses on shrimp boat. Be gone ten days. Calhoun notified." (Calhoun is one of the attorneys for appellants.) It is not shown when the Comeaux brothers left on the shrimp boat. Appellants did not take the deposition of either witness, although they knew that the case was the first case set for trial on October 19, 1959, and had been set some thirty days or more prior thereto. They did not object to the resetting of the case for that date, thus at least impliedly agreeing thereto.

Appellants rely on several cases in which subpoenas had been issued only a few days before the cases were set for trial and in which it was held that the trial court erred in overruling motions for continuance. Such cases in the main part were decided by Courts of Civil Appeals prior to the

decision of Fritsch v. J. M. English Truck Line, 1952, 151 Tex. 168, 246 S.W.2d 856. In the Fritsch case the Supreme Court refers to the case of Hensley's Adm'rs v. Lytle, 5 Tex. 497, 55 Am.Dec. 741, and quotes with approval the following statement [151 Tex. 168, 246 S.W.2d 859]:

"'The facts stated, however, in our opinion do not constitute that diligence which the law requires. It has provided parties with the process of the court by subpoena, and in case of its nonobservance, attachment to enforce the attendance of witnesses; and where a party has omitted to employ the means provided by the law when practicable, the omission will in general be fatal to his application. If he elects to employ other means than those provided by law, it will be at his peril. Accordingly, it is held that where a party neglects to subpoena a witness and relies on his promise to attend, his non-attendance will not be a cause of continuance.'"

The Supreme Court then said:

"That the defendant in this case at the eleventh hour asked the issuance of a subpoena which could not be served because the witness had left the county, cannot be in ease of his want of diligence nor alter his position for the better (citing cases)."

In the Fritsch case the Supreme Court held that the requirement of the rule that there be a showing of diligence to procure the testimony of a witness applies to a first as well as a second motion for continuance, and that the only difference between them is that the first motion is not required "to show that the absent testimony cannot be procured from any other source."

We have been unable to find any sound basis for distinction between the present case and the Fritsch case. In each case the subpoena was not issued until four days before the case was set for trial. It is true that in the Fritsch case at a previous setting

the parties agreed to a preferential setting for December 11, and that on the Friday preceding such date the defendant announced ready for trial unconditionally. The case, however, was listed as the fifteenth case on the docket ready for trial when reached by any of the District Courts of Harris County during the following week, and was not reached until Tuesday, December 12, when defendant filed its motion to withdraw its announcement of ready and for continuance based on the absence of material witnesses, two of whom later appeared and testified. The instant case was not, so far as the record shows, designated as preferentially set, but it had first place on the docket, and such fact was known to appellants. We think it of no controlling significance that in the Fritsch case there had been an announcement of ready several days before the case was reached, and that in the instant case no announcement of ready was made. It seems clear that if the issuance of the subpoena four days before the date of the setting in the Fritsch case did not constitute due diligence, that the same thing is true in this case. In both such cases (using the expression of the Supreme Court) the defendant did not ask for the issuance of a subpoena until the eleventh hour, and in both cases the subpoena could not be served because the witness had left the county.

■ In the Fritsch case the Court stated:

"Except for the statement that the witness had orally agreed to appear as a witness when called, the motion did not seek to excuse the failure of defendant to place the witness under subpoena for the November 20th setting, nor to excuse the failure to place him under subpoena for the December 11th preferential setting promptly upon the making thereof, nor to excuse the failure to take his deposition at some time prior to the November setting or thereafter and prior to the De-

cember setting as provided in Rule 186, T.R.C.P."

We think the same thing may be said in the instant case with respect to appellants' failure to subpoena said witnesses prior to the earlier settings of the case, or to place them under subpoena promptly upon the resetting of the case, or to take their depositions prior to the earlier settings or thereafter and prior to the resetting of the case for October 19, 1959.

It is also noted that although appellants stated that they had obtained written statements from the witnesses in question, they at no time tendered such statements and did not offer to introduce such statements in evidence. See Traders & General Ins. Co. v. Gray, Tex.Civ.App., 257 S.W.2d 327.

■ There is no merit in appellants' contention that the Trial Court erred in permitting appellee to amend his first amended petition on the eve of trial and sue for $65,000 instead of $37,500. In his original petition appellee alleged that he specifically reserved the right to amend and plead for such other and different amounts of damages as his treatment and condition should from time to time indicate. Moreover, the jury allowed only $20,000 in answer to Issue No. 26. Appellants have failed to show any harm even if there was error in permitting the amendment. Rule 434, T.R.C.P.

Under the evidence in this case and the law as enunciated in the Fritsch case, we are unable to say that the Trial Court abused its discretion in overruling appellants' motion for continuance, although a rather high degree of diligence seems to have been required.

In their third and fourth Points, appellants contend in substance that the court erred in overruling their objections to Special Issue No. 26 and submitting "loss of earnings, both past and future" for the reason there was no evidence or insufficient evidence to support the submission of such Issue and that the jury's answer is against

the overwhelming weight and preponderance of the evidence, and further that the court erred in overruling their motion for new trial because the amount of $20,000 allowed appellee is grossly excessive.

We think it would serve no useful purpose to set out the testimony of the medical and lay witnesses concerning the injuries sustained by appellee and the incapacity resulting therefrom, and the pain he endures. It is sufficient to say that we have read the statement of facts and the testimony of all the witnesses pertaining to appellee's injuries and loss of earning capacity, and suffering, and are of the opinion that there was sufficient evidence to support the submission of Special Issue No. 26 and that the jury's answer thereto is not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. We have also concluded that the amount of the award of damages, although large, is not excessive. Physical pain and mental anguish are difficult to evaluate in dollars and cents, but while they may be somewhat intangible, they are nevertheless real and constitute proper elements of damages, even though they do not result in loss of earnings.

The fact that the injured party may continue to work and earn as much as or more than he formerly did, especially when in an employment he has been engaged in for years, as in this case, does not bar him from recovering for loss of earning capacity. Issue No. 26 includes diminished earning capacity, but does not include loss of earnings in the future, as appellants indicate. The undisputed evidence that appellee had declined over-time work because of his physical condition, and his lost time from work which was charged against his accumulated sick leave, even though his wages were paid, warranted inclusion of loss of earnings down to the date of trial. Dallas Consolidated Electric Street Railway Co. v. Motwiller, 1908, 101 Tex. 515, 109 S.W. 918; Lantex Construction Co. v. Lejsal, 1958, 315 S.W.2d 177, writ ref., n. r. e.; Port Terminal Railroad Association v. Noland, 1956, 288 S.W.2d 276, writ ref., n. r. e.; Missouri Pacific Railroad Co. v. Rhoden, 1958, 310 S.W.2d 607.

In their next Point appellants contend that the Trial Court erred in not giving their requested instruction affirmatively excluding from the jury's consideration damages for plaintiff's prior heart ailment in Special Issue No. 26. We do not agree. There is no question that appellee had suffered a heart attack several years prior to the collision in question, and that he had been placed under restrictions against climbing, going up stairs unless slowly, heavy work and overheating. Issue No. 26 authorized the jury to take into account certain elements of damage directly and proximately caused by the occurrence of September 29, 1958 "and none other". Additionally, the court gave the following instruction:

"You are further instructed that you must exclude from your estimate in considering damages for injuries, if any, and suffering, if any, of such plaintiff, which may be due solely or partly to ailments or physical conditions, if any, which he may have had before the accident, but if you find from a preponderance of the evidence that the injuries, if any, have aggravated any ailment or physical conditions, if any, the plaintiff may have had prior to the time of the alleged injuries, then you may consider in you estimate such aggravation, if any, and if you find from a preponderance of the evidence that since the time of his alleged injuries the plaintiff has suffered with ailments independently of such injuries, if any, you will exclude from your estimate, suffering, if any, or injuries, if any, due solely or partly to such subsequent ailments."

Thus, the jury were affirmatively instructed to exclude from their estimate in considering damages for injuries, if any, and suffering, if any, of appellee, which

may be due solely or partly to ailments or physical conditions which appellee may have had before the accident or subsequent thereto. We think this affirmative instruction was sufficient without singling out appellee's prior heart ailment. It included not only the heart ailment but any other condition or ailment not caused or aggravated by the accident in question. Yellow Cab and Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92; Superior Insurance Company v. Burnes, 1955, 278 S.W.2d 934, writ ref., n. r. e.; Rule 279, T.R.C.P.

Appellants assert that the Trial Court erred in not sustaining their objections to Special Issue No. 26 for the reason that such issue permitted the jury to consider as separate items of damage the elements of "physical impairment" and "loss of earning" up to the date of trial, and "physical impairment" and "diminished capacity to work and earn money", in the future, after date of trial, thereby allowing a double recovery.

In their objections made to such issue in the Trial Court, appellants stated that physical impairment was not a proper element of damage because appellee had incorporated in such issue "loss of earning in the past, loss of earning in the future, pain and suffering in the past and future, mental anguish in the past and future." There was no objection that the inclusion of the element of "physical impairment" in the issue permitted a duplicate or double recovery. In other words, the objection does not distinctly point out to the court that the inclusion of both "loss of earning" and "physical impairment" would allow a double recovery. Our Supreme Court clearly announced in Missouri Pacific Railroad Company v. Kimbrell, Tex.Civ.App., 334 S.W.2d 283, the necessity to point out distinctly the alleged error in order to give the Trial Court an opportunity to correct any such error in the charge so that the case might be properly submitted. See also Yellow Cab & Baggage Co. v. Green, supra; Rule 274, T.R.C.P.

The issue in question is not erroneous unless the elements of damage necessarily duplicate one another. Appellants have not cited any case in which the identical language complained of in this case has been held to necessarily permit of a double recovery. In Riley v. Norman, Tex.Civ.App., 1954, 275 S.W.2d 208, 209 writ ref., n. r. e., the appellant complained that the trial judge's instruction that damages could be awarded for "physical impairment" and for "dimished capacity to work and earn money," permitted a double recovery. The court held that "physical impairment" and "diminished capacity to work and earn money" do not necessarily imply one and the same thing. The court stated:

"Diminished capacity to work and earn money may and ordinarily does result from physical impairment, but physical impairment does not necessarily result in diminished capacity to work and earn money. It depends on the nature of the impairment and the nature of the work. * * * Physical impairment, as well as the result, diminished capacity to work and earn money, were both proper elements of damage. The physical impairment with its accompanying pain and suffering was a scar on the forehead and at least a temporarily swollen knee. Norman was entitled to recover for these injuries even had there been no diminution of his earning capacity because of them."

In Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., Waco 1933, 66 S.W.2d 496, 501, reversed on other grounds Schroeder et al. v. Rainboldt, 1936, 128 Tex. 269, 97 S.W.2d 679, a young girl had sustained a bladder injury. It was contended that the element of "physical impairment" constituted a dual submission with the element of "physical pain and anguish." The court said:

"Appellants claim that a double recovery was permitted, in that physical pain and anguish are involved in bodily

impairment. This is incorrect. Bodily impairment, as charged by the court, is the loss or injury of a member. There is of course incidental pain and suffering connected therewith, but it is separate therefrom. * * * The evidence supports the element of bodily impairment. Her bladder is permanently injured."

■■ In the instant case there is evidence which would support a finding that appellee suffered a ruptured disc in the cervical spine with malalignment, nerve root pressure, fibrous tissue and calcium deposits in the cervical spine, resulting from the injury. This constituted a physical impairment which did not necessarily affect appellee's capacity to labor and earn money. We think there was no necessary duplication of elements of damage in the issue. But if we are mistaken in this, we are of the opinion that appellants' Sixth Point nevertheless must be overruled because the objection made to the issue in the Trial Court did not specifically point out that there was any duplication in the elements of damage as submitted.

■ By their last Point, appellants complain of arguments of counsel, which appellants say were designed to induce the jury to return a general verdict for plaintiff and informed the jury as to the effect of their answers to the Special Issues. Appellants' complaint has not been properly preserved for review by a bill of exception, pursuant to Rule 372, T.R.C.P. The record does not show that counsel for appellee agreed to the accuracy of the court reporter's notes, or appellants' motion for mistrial appearing in the transcript. It does not appear that the trial judge ever certified to the accuracy of the portions of the alleged argument complained of, or that he was presented with a bill of exceptions or given an opportunity to qualify a bill with respect to the accuracy of what was allegedly stated in the arguments or in any other way. The law is well settled that appellants have not properly preserved the alleged error.

Smith v. United Gas Pipe Line Co., 1950, 149 Tex. 69, 228 S.W.2d 139; Pritchett v. Highway Insurance Underwriters, Tex. 1958, 309 S.W.2d 46. See also Bolstad v. Egleson, Tex.Civ.App.1959, 326 S.W.2d 506, writ ref., n. r. e.; and Bashrum v. Vinson, Tex.Civ.App.1959, 330 S.W.2d 538, writ ref., n. r. e.

The judgment of the Trial Court is affirmed.