**MAGNOLIA PETROLEUM CO. v.
JOHNSON et al.**

No. 14589.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 3, 1943.

Walace Hawkins and Earl A. Brown, both of Dallas, and Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

Kearby Peery, J. W. Fribeg, and T. R. Boone, all of Wichita Falls, for appellee Missouri, K. & T. Ry. Co. of Texas.

Napier & Napier, of Wichita Falls, for appellee L. Johnson.

SPEER, Justice.

Plaintiff L. Johnson sued Magnolia Petroleum Company, to which defendant we shall refer as Magnolia, and Missouri, Kansas & Texas Railway Company of Texas, to which we shall refer as MKT, to recover damages to property and the health and comfort of himself and wife because of an overflow of waters from a tank or lake constructed by Magnolia on a small stream.

For cause of action, plaintiff alleged substantially that many years prior to the date of his injuries, Magnolia had constructed an earthen dam across a small stream or creek which flowed in a general easterly direction, passing under MKT's railroad and adjacent to plaintiff's one acre home, and thence through a concrete bridge on the highway; that the dam obstructed the natural flow of water that came down the creek and impounded it in a tank or lake on Magnolia's property; that the dam was 200 or 300 yards up-stream from plaintiff's property; that MKT built its railroad across said stream and provided a conduit or sluice-way about four feet in diameter, to permit the water of the stream to pass through its embankment; that plaintiff's property is about 100 feet east from the east line of the railroad right-of-way. That Magnolia caused the waste oil and salt water from its refinery to drain into said lake and, over the years, had accumulated large quantities of such waste in the lake; that on October 2, 1941, the lake filled with water and ran over the earthen dam, and because of the inadequacy of the dam, in its then deteriorated condition, the water pressure caused it to break near its center and great quantities of water came flooding down east, washing out the MKT dump and flooding plaintiff's home, yard, orchard, out-houses and water well, destroying much of it and depositing said sediment over his

premises. Plaintiff alleged that MKT had failed to make adequate provisions for the water naturally flowing along said stream to pass through the flume so installed.

Allegations were made that Magnolia failed to keep and maintain said dam in repair but had permitted it to erode and become thin and weakened to such an extent that the water pressure caused it to break and flood his property. That the various acts of negligence charged to both defendants were proximate causes of his damage to property and the discomforts suffered in the home.

Both defendants denied, generally, all charges of negligence. Magnolia defended largely upon the ground that the rainfall on the date involved was unusual and unprecedented and such as could not have been reasonably foreseen by the exercise of such care as it stood charged with; that the real cause of plaintiff's land being flooded was the failure of the MKT to provide sufficient means of escape for flood waters through its railroad dump; that the heavy pressure of the flood waters broke MKT's embankment and caused the waters in large quantities to flow upon plaintiff's property. Magnolia prayed for judgment over against MKT for any sum that should be found against Magnolia.

MKT denied, generally, Magnolia's charges against it, and as against plaintiff, pleaded that another creek flowed north from the vicinity of the town of Burkburnett and joined the stream which passed through its railroad dump a short distance from plaintiff's property; that said stream flowing north flooded plaintiff's property with water containing filth, garbage and debris from the dumping grounds of the town and proximately caused his damages.

A jury trial was had. At the conclusion of taking testimony, Magnolia moved for an instructed verdict as against plaintiff, assigning many reasons why the motion should be granted. At the same time it filed a motion for an instructed verdict against the MKT. The last mentioned motion was not conditioned upon the nature of any judgment that might be rendered against Magnolia; reasons for the request accompanied the motion. The view we take of this appeal renders it unnecessary for us to discuss the request for judgment in favor of Magnolia against MKT. Both motions by Magnolia were refused and special issues were submitted to the jury. The verdict was in every way favorable to plaintiff against Magnolia and exonerated MKT from liability. Judgment was for plaintiff against Magnolia; hence this appeal by that defendant.

The special issue verdict found that Magnolia failed to maintain an adequate dam at its water tank, such failure was negligence and a proximate cause of plaintiff's damage. It found the difference between the reasonable market value of plaintiff's property just before it was flooded and just afterward to be $300. It was found that MKT did not fail to keep and maintain adequate escape for flood waters under its dump or fill near plaintiff's property; that MKT's acts were not negligence or proximate cause. Jury also found that plaintiff and his wife had sustained injury to their persons as a direct result of sediment from the lake settling on their property; that the negligence of Magnolia previously inquired about was the proximate cause of their personal injuries, and assessed their damages for such personal injuries at $500; that the odors complained of by plaintiffs did not come from sewage and other garbage washed upon plaintiff's property by flood waters running north down the creek lying between the railroad and highway. Because of one point raised, we quote special issue 18 and its answer: "Do you find from a preponderance of the evidence that the volume of water running down the natural water way to the east of the railroad right-of-way was the sole proximate cause of the damages, if any, sustained by plaintiff? Answer 'yes' or 'no'." The answer was: "Yes." It was also found that the impounding of water by Magnolia in such quantities and the breaking of its dam under said pressure was the sole cause; that the failure of Magnolia to maintain its dam in such a condition as to withstand the quantity of water impounded by it was the sole cause of plaintiff's damages; MKT's fill would not have washed out if Magnolia's dam had withstood the pressure of the impounded water; and that the means of escaping water provided by MKT would have taken care of the flow if Magnolia's dam had not broken from the pressure of water thereon.

Points of error one and two complain because the court refused Magnolia's requested peremptory instructions based upon the propositions that, (a) the undisputed evidence and (b) the overwhelming weight of the evidence, showed the rainfall at the

time in controversy was extraordinary and unprecedented.

■ Both points must be overruled because the record does not sustain them. Without going into a full discussion of conditions which might be termed "acts of God" for which a party is not responsible in damages, as discussed in 1 Tex.Jur. 694, sect. 3, et seq., the testimony on the point is conflicting and therefore not conclusive either way; nor is it such as that reasonable minds may not differ as to conclusions reached. Several witnesses said in substance that it was the hardest rain they had ever seen; that they saw more water on the ground just after the rain than they had ever seen before in that vicinity. These witnesses had lived in that area over a period of years, ranging from five to twenty-three. Other witnesses said substantially that the rainfall at that time was not greater than they had seen many times before in that section of the country. It is the settled rule of law in this State that in determining whether or not an instructed verdict will be given, the testimony must be so conclusive that reasonable minds may not differ as to a conclusion reached. Some of the many cases announcing this rule are Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63; Wallace v. Southern Cotton-Oil Co., 91 Tex. 18, 40 S.W. 399; Ferrell v. Beaumont Traction Co., Tex.Com. App. 235 S.W. 531; Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139; and Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224.

■ Another well established rule would also preclude the giving of an instructed verdict in such circumstances as the instant one; it is, in substance, that to determine if a summary instruction should be given, all testimony must be construed most favorably to the one against whom such a verdict would be returned under the instruction. McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442; City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652.

■ Point three charges error in the court's refusal to summarily instruct the jury to return a verdict in favor of Magnolia against MKT, because it is argued that the evidence, without dispute, shows that the flume provided by MKT for passage of water through its embankment was insufficient to permit passage of the water coming down the stream. The requested instruction was filed at the same time a request was made for an instructed verdict in favor of Magnolia against plaintiff. The motion for judgment against MKT was in no way limited or qualified so as to be conditioned upon whether or not a judgment would be rendered in favor of plaintiff against Magnolia. There was evidence to the effect that the flume provided by MKT was sufficient to carry all waters that had previously come down the stream since the construction of Magnolia's dam; that the dam was so constructed that in the past it had held the water coming down stream until it was near enough full that water passed around the dam and over the spillway at the southern end thereof, and that the flume was adequate to care for the flood waters that passed over the spillway. Such testimony raised a jury question of fact concerning the sufficiency of the exit prepared and maintained by MKT; this was the only act of MKT upon which Magnolia sought judgment over against it. Authorities above cited preclude the giving of a summary instruction in favor of Magnolia against MKT as requested.

■■ Fourth and fifth points presented by Magnolia complain because of the court's failure to sustain its motion to withdraw certain testimony of the witness Ryan from the jury, and later sustaining the motion and declining to grant a motion for a declaration of mistrial. The situation presented is substantially this: Plaintiff had rested his testimony and defendant MKT called to the stand the witness Ryan, a track maintenance foreman. The witness said that some months before the date on which the dam broke, he observed a large hole in the lower side of Magnolia's dam; that he went to the office of Magnolia near by and "saw" the cashier. That he also saw a man in a truck and told him of the hole in the dam; that he did not know the name of either of the parties referred to. No objection was made to the witness' testimony when offered. In the afternoon when Magnolia had the witness on cross-examination, he repeated his testimony and again said he did not know either of the men to whom he had talked, nor did he know if they were Magnolia employees. Counsel then moved the court to withdraw from consideration by the jury Ryan's statements about having told some one of the holes in the dam. The court at first overruled the motion and then reconsidered his ruling and withdrew the testimony and so instructed the jury at the time. Counsel then moved the court to de-

clare a mistrial because of the prejudicial effect the testimony must have had on the jury. The last motion was overruled. The record indicates one part of the controversy was before noon and the final rulings in the afternoon. If Magnolia had objected to the testimony when it was first disclosed that witness did not know to whom he talked, the objection would have been well taken insofar as it purported to give notice to Magnolia of the defects in the dam. But counsel having failed to protest the testimony, no error was shown. When he later moved for its exclusion the court first denied the request and then granted it; this was all counsel asked for. The time element entered into the situation, of course. In Missouri Pac. R. Co. v. Mitchell, 75 Tex. 77, 12 S.W. 810, it was held that where testimony was admitted without objection, a party could not base error upon the court's refusal to charge the jury not to consider the testimony. It was held that the request came too late. In 64 C.J. 215, sect. 224, this is said: "Inexcusable delay in moving to strike out objectionable evidence is ground for denying the motion. Ordinarily a motion to strike out objectionable testimony must be made at the time the testimony is given, if the objection to the testimony is then apparent." The two last cited authorities were mentioned with approval in Collins v. Smith, Tex.Sup., 175 S.W.2d 407. That case involved the admission by the court of incompetent testimony under Art. 3716, when no objection was made at the time offered, and after testimony was closed, counsel requested its withdrawal from the jury's consideration, and the request was denied. Court held it came too late, and that the competency of the testimony was waived by not objecting at the time it was offered. These authorities may not be considered directly in point here, but they are at least analogous.

█ We see no error in the court's refusal to declare a mistrial upon the grounds urged. The testimony complained of only went to the notice Magnolia may have had of the defect in the dam. The undisputed testimony shows that the dam had been built and used by Magnolia since 1919; that when constructed it was of sufficient width at the top for a wagon and team to pass over its entire length; that rains and weather conditions had caused it to erode a great deal until at the time it broke it was not more than three or four feet wide at the top. It affirmatively appears that one hole perhaps four feet deep had been dug by somebody on the water side of the dam and the one described by Ryan was on the other side of the dam; they said there were appearances of smoke on the walls, as if a fire had been built in the holes; the holes were near the center of the dam where it gave way under the pressure of the stored water; there is no testimony by any one that repairs were ever put on the dam since it was built. Irrespective of the notice Magnolia may have had, it was encumbent upon it to use reasonable care to maintain the dam so as to prevent its breaking and turning an unusual amount of flood waters onto adjoining property. We think there is quite a distinction between the situation presented here and what was discussed in Fort Worth & D. C. R. Co. v. Walters, Tex.Civ.App., 154 S.W.2d 177, cited and relied upon by appellant. To carefully read that opinion will be to discover the distinguishing features.

█ Point six asserts error in giving special issues one and two. No. one inquired if Magnolia had failed to maintain an adequate dam at its water tank at the time inquired about, and No. two inquired if such failure was negligence. It is urged that the first issue implied that it was the absolute duty of Magnolia to maintain an adequate dam, and that the word "adequate" was not defined. The answer to the second issue found that the failure to maintain an adequate dam was negligence, as defined by the court. This finding was equivalent to a finding that Magnolia had failed "to do that which an ordinarily prudent person would have done under the same or similar circumstances", as contained in the court's definition of negligence. There was no request made by Magnolia for a definition of the word "adequate" with a substantially correct definition attached. In the absence of such request no grounds for reversal are presented. Rule 279, Texas Rules Civil Procedure; Great American Ind. Co. v. Sams, Tex.Sup., 176 S.W.2d 312.

█ Point seven reads: "Error of the court in defining 'reasonable cash market value'." The court's definition was: "By the term reasonable market value, as used in this charge, is meant, that sum of money that an owner, desirous to sell but not bound to do so, can secure in cash within a reasonable time on the open market from a person who is desirous to buy, but not

bound to do so." Such a definition in almost identical language was approved in Fort Worth & D. S. P. R. Co. v. Gilmore, Tex.Civ.App., 13 S.W.2d 416. It is argued in the brief that the definition and the special issue submitted thereunder are too vague and indefinite and gave the jury the right to speculate as to the depreciated value of plaintiff's land, and that they failed to limit the jury to a consideration of land of like kind and quality in the neighborhood. The point of error assigned is to the definition quoted, and in no way raises an objection to the issue submitted inquiring about values. No objection was made to the testimony by experts on values; no witness attempted to make comparisons of this with other lands; there was only one tract in controversy and Magnolia offered no testimony on values. We do not see upon what theory it could be said that the submitted issue was broad enough to permit the jury to speculate upon values at a time or place other than those presented by the pleadings, the testimony and the theory upon which the trial was had. See Grocers Supply Co. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911; Clowe & Cowan v. Morgan, Tex.Civ. App., 153 S.W.2d 863 (writ refused in each case), and Massingill v. Henwood, 138 Tex. 317, 159 S.W.2d 118.

Eighth and last point asserts error because the court rendered judgment for plaintiff on the verdict in the face of the jury's answer to special issue 18. Earlier in this discussion we have quoted special issue 18 and the answer. If we properly understand the point raised and the argument thereunder, it is contended by Magnolia that in view of the special issue mentioned and its answer, plaintiff's damages resulted solely from waters coming onto his property from a source other than from its impounded waters. We do not so construe the finding. This record reveals that plaintiff's property is situated fifty or a hundred feet north of a draw or branch which flows east from Magnolia's dam, and the southeast corner of his one acre tract is about 100 feet north of the point where another branch or creek flowing north empties into the first mentioned stream and after the two join they flow under the concrete bridge on the public highway. By reference to special issue 18 above quoted it will be observed the jury found that the volume of water running down the natural water way to the east of the railroad right-of-way was the sole proximate cause of the damage. Because of the pleadings of MKT and the testimony offered thereunder, the court submitted special issue 19, which inquired if the odors complained of by plaintiff was the result of sewage and garbage being washed upon plaintiff's land by the flood waters running north down the creek lying between the railroad and the highway; to issue 19 the jury answered "no". Without a display here of the very illuminating plat of both streams, the lake, the dam, railway line, highway and plaintiff's property, it is rather difficult to describe the picture they present. But from the plat and the testimony it is obvious that there is only one stream in which the water, in the vicinity of plaintiff's property, "flows east of the railroad". That stream is the one across which Magnolia had constructed its dam. If the inquiry in issue 18 had referred to the other stream, it would of necessity have referred to it as conveying water flowing north. There is no inconsistency in the answer to special issue 18 and in the remainder of the jury findings. It is a fundamental rule of law in this State that the whole charge will be looked to, and considered as a whole, in order to determine the validity of an objection to any portion of it. 24 Tex.Jur. 626, sect. 134, et seq.

We note that by four special issues inquiries are made and answered concerning "sole proximate cause" and "sole cause". But as we view each of these inquiries they pertain to the same thing and it cannot be said that they present a fundamental error. To illustrate, the answers find as sole causes, (a) water flowing east down the water way, (b) impounding water by Magnolia and the breaking of its dam, and (c) failure by Magnolia to maintain its dam in such a way as to withstand the pressure of the impounded water. No point is made of vice in the verdict on these accounts.

Finding no error in the judgment worthy of reversal, it will be affirmed. This is our order.