**CIRCLE Y OF YOAKUM, Appellant,**

v.

**Sharlene BLEVINS, Appellee.**

No. 6–91–030–CV.

Court of Appeals of Texas, Texarkana.

March 10, 1992.

Rehearing Denied April 7, 1992.

Charles T. Frazier, Jr., Cowles & Thompson, Dallas, Charles Connolly, Merriman, Patterson & Allison, Longview, for appellant.

Ron Adkison, Wellborn, Houston, Adkison, Mann, Sadler, Henderson, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

This is a products liability case. Sharlene Blevins was injured when she fell from a horse after a strap on her saddle broke. The saddle was designed by Circle Y of Yoakum and Martha Josey, manufactured by Circle Y, and sold by Josey Enterprises. Arthur Harris, a friend of Blevins, purchased the saddle and gave it to her in April 1987. Before her accident, Blevins adjusted the saddle strap by cutting about seven inches off and punching two holes in it.

The accident occurred when Blevins competed in a barrel racing event in Tyler. The strap tore and Blevins fell. She injured her head, hand, ribs, and left shoulder. Surgery was successfully performed on her shoulder and hand in July 1987. In August, Blevins' surgeon approved her for part-time work. He cleared her for full-time work, with a thirty pound lift restriction, in September. She was allowed to lift as much as seventy pounds in November. Blevins' initial injuries and subsequent

treatments also led to other problems, such as depression and difficulty withdrawing from prescribed painkillers.

Blevins sued Circle Y and Josey Enterprises for damages. In a jury trial, she obtained favorable findings on her claims of design defect, manufacturing defect, breach of implied warranty of merchantability, negligence, Deceptive Trade Practices Act violations, and gross negligence. The jury ascribed 100% causation to Circle Y and awarded Blevins $1,320,000.00 in actual damages and $20,000.00 in exemplary damages. The trial court disregarded the exemplary damages finding, but left the gross negligence finding undisturbed. The final verdict was for $1,571,592.00, including prejudgment interest. Circle Y does not challenge any other liability findings.

Circle Y's motion for new trial, raising the contentions now before this Court, was overruled. Josey Enterprises was granted an instructed verdict and is not a party to the appeal.

In twelve points of error, Circle Y contends that the trial court erred in (1) denying its challenge for cause to a venireman; (2) admitting hearsay testimony by Arthur Harris; (3) admitting the testimony of an improperly designated expert witness; (4) sustaining an "outside the record" objection to Circle Y's closing argument; (5) allowing Blevins' counsel to make improper closing argument; (6) admitting various medical records; and (7) submitting the gross negligence liability question to the jury.

Circle Y also asserts that there is factually insufficient evidence to support the monetary damages and that the damages are excessive.

In a single cross-point, Blevins contends that the trial court improperly disregarded the jury's findings of exemplary damages.

■ Circle Y first asserts that the trial court erred in denying its challenge to a certain juror. If the challenge should have been sustained, harmful error occurs if the

party uses all allotted peremptory challenges and cannot strike other objectionable jurors because the trial court refused to strike the disqualified juror. However, to preserve error, the complaining party must advise the court of the situation before the peremptory challenges are exercised. *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888, 890 (Tex.1985); *King v. Graham Holding Co.*, 762 S.W.2d 296, 302 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Red River Pipeline v. Amonett*, 695 S.W.2d 802, 807 (Tex.App.—Amarillo 1985, no writ); *Carpenter v. Wyatt Construction Co.*, 501 S.W.2d 748, 750 (Tex.Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Circle Y did not inform the trial judge of its predicament until the day after the jury was empaneled; consequently, it waived any error in this regard.

Circle Y next contends that the trial court erred in overruling its hearsay objection, motion to disregard, and motion for mistrial based on Arthur Harris' testimony.

■ Harris testified about his conversations with third parties concerning Circle Y's saddles. Circle Y filed a bystander's bill of exceptions reflecting that its hearsay objections were made and overruled at an unrecorded bench conference before the testimony was received.

The trial court prepared its own bill which stated that the hearsay objection was *sustained,* after which the testimony was admitted "on other grounds" without objection.

■ We find Circle Y's bystander bill fatally defective because the affiants were all attorneys involved in the case. In *Smith v. United Gas Pipe Line Co.*, 149 Tex. 69, 228 S.W.2d 139 (1950), the Texas Supreme Court held that bystander's bills are defective if supported only by affidavits of attorneys participating in the case. In *Harris County Flood Control Dist. v. Cohen*, 282 S.W.2d 917 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.), the court held that the term "bystander" "relates to one who has no concern in the outcome of the case on trial." *Id.* at 919.[1] Since all

1. Both *Smith v. United Gas Pipe Line Co.*, 149    Tex. 69, 228 S.W.2d 139 (1950), and *Harris*

the affiants in the present case were interested in the outcome, Circle Y's bystander bill has no validity and may not be considered by this Court.

■ This leaves us with the trial court's bill showing that the evidence was admitted on other grounds. A timely objection or request and ruling are necessary to preserve error for appeal. TEX.R.APP.P. 52(a). Since Circle Y made no objection or request for a limiting instruction after the trial court ruled the evidence was admissible on other grounds, no complaint has been preserved. *See e.g., Magnolia Petroleum Co. v. Johnson,* 176 S.W.2d 774, 778 (Tex.Cir. App.—Fort Worth 1943, no writ).

■ Circle Y also contends that the trial court erred in admitting the testimony of an improperly designated expert witness. The expert, Dr. Brown, was designated in a written supplemental response to Circle Y's interrogatories. The supplementary designation was verified by Blevins' attorney rather than by Blevins herself. Circle Y argues that the verification was insufficient and the testimony was inadmissible.[2]

Circle Y relies on cases where a party totally failed to supplement responses. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669 (Tex.1990); *Stiles v. Royal Ins. Co. of America,* 798 S.W.2d 591 (Tex. App.—Dallas 1990, writ denied); *see also, Boothe v. Hausler,* 766 S.W.2d 788 (Tex. 1989); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986). None is on all fours with the present case.

*Jones v. Kinder,* 807 S.W.2d 868 (Tex. App.—Amarillo 1991, no writ), involved an unverified supplementary response designating an expert witness. That court saw TEX.R.CIV.P. 168(5) as requiring verification of original answers to interrogatories, but,

finding no specific verification requirement in TEX.R.CIV.P. 166b(6)(b)'s duty to supplement, held that additional verification is not necessary when a party timely supplements answers to interrogatories in writing. *Jones v. Kinder,* 807 S.W.2d at 872–73. We agree and hold that Blevins' supplementary response properly designated Dr. Brown as an expert witness.

■ Circle Y complains that the trial court erred in sustaining Blevins' objection to comments by defense counsel in closing argument. Defense counsel commented about statements in a medical record. Blevins' counsel objected, claiming that the record was not in evidence. Apparently, the judge asked defense counsel at an unrecorded bench conference to show him the record, but counsel could not find it. The court then sustained the objection and instructed the jury to disregard the comments.

As a matter of fact, the record was in evidence. The question becomes, then, whether the court's exclusion of the argument was so harmful as to require a new trial. After final arguments were concluded, the court held a hearing on the matter. It determined that the exhibit had been placed in evidence and allowed it to go to the jury during deliberations along with all other exhibits.

■ Litigants are entitled to argue about matters in evidence, *Texas Sand Co. v. Shield,* 381 S.W.2d 48, 57–58 (Tex.1964); TEX.R.CIV.P. 269(e), and refusal to allow such argument is error. *Stockwell v. Snyder,* 126 Tex. 6, 84 S.W.2d 705, 707 (1935). Since the evidence was before the jury during its deliberations, this error, *standing alone,* may not have been such a denial of Circle Y's rights as was reasonably calculated to cause and probably did cause an

---

*County Flood Control Dist. v. Cohen,* 282 S.W.2d 917 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.), dealt with TEX.R.APP.P. 52(c)(8)'s predecessor, TEX.R.CIV.P. 372(j). This latter rule tracks the wording of Rule 52(c)(8) with respect to the bystander language. *See Harris County Flood Control Dist. v. Cohen,* 282 S.W.2d at 919.

2. TEX.R.CIV.P. 166b(6)(b) requires supplementation of expert designations. TEX.R.CIV.P. 168(5)

provides that the answers to interrogatories "shall be signed and verified by the person making them and the provisions of Rule 14 [allowing verification by attorney] shall not apply." TEX.R.CIV.P. 215(5) reads, in part: "A party who fails to . . . supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a . . . supplemental response. . . ."

improper judgment. TEX.R.APP.P. 81(b)(1). However, closely tied to the preceding complaint is Circle Y's contention that Blevins' counsel made improper comments and engaged in improper jury argument during final summations. The following argument and exchanges occurred:

[Argument by defense counsel]:

[DEFENSE COUNSEL]: ... That's the only problem that she expressed to Dr. McGinty, October of 1987. "The only problem that she is having now is that of recurrent breast nodularity and fear that this may inhibit her from being able to ride."

. . . .

[PLAINTIFF'S COUNSEL]: ... That's not in this record. I don't know where that came from, but that ain't in this record.

. . . .

THE COURT: All right. I'll sustain the objection.

[PLAINTIFF'S COUNSEL]: I ask the Jury be instructed to disregard that.

THE COURT: The Jury is so instructed.

[PLAINTIFF'S COUNSEL]: And ask Counsel be instructed not to be bringing exhibits in here that are not in evidence.

THE COURT: Stay in the record.

. . . .

[PLAINTIFF'S COUNSEL]: Your Honor, I have another objection. I've gone through the Schumpert record, and the other record that he's exhibited to the Jury is not in the Schumpert record either as he's represented to the Jury.

. . . .

[Argument by plaintiff's counsel]

[PLAINTIFF'S COUNSEL]: I'll tell you something else. Larry Merriman does not want you to decide this on the actions of the lawyers, because he has just pulled the most despicable act that I've ever seen in a courtroom.

[DEFENSE COUNSEL]: Your Honor, I object to that. If that's not a side bar remark, I don't know what it is.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I ask the Jury be instructed to disregard that side bar remark.

THE COURT: The Jury is so instructed.

[PLAINTIFF'S COUNSEL]: I don't know where he got this, and anybody with a typewriter can do it, but you look at where he said it come from, out of Dr. McGinty's record—

[DEFENSE COUNSEL]: May we show them were we got it?

[PLAINTIFF'S COUNSEL]: —that's in evidence—

[DEFENSE COUNSEL]: Would he like to see it?

[PLAINTIFF'S COUNSEL]: Your Honor, this is my argument, and I have sat through theirs. I'm talking about what's in evidence and I've got the exhibits that they put in evidence here.

THE COURT: All right. I'll overrule the objection. Go ahead.

. . . .

[PLAINTIFF'S COUNSEL]: Thank you, Your Honor. You look in those records. That ain't nowhere in there. You heard the Judge sustain the objection. What's this all about? Well, if you're not going to call any witnesses and you ain't going to put nobody on the stand, just make something up. Although I never dreamed it'd really happen. I've never seen it before. If you can't get a doctor to come in and say she's not hurt, come up with a half page of something that don't even have his letterhead on it and put it in front of the Jury, when it's not even in evidence and nobody knows whether it's his.

I didn't talk to y'all a while ago about punishing Circle Y of Yoakum, but I'm fixing to now. Remember that? A while ago I didn't say anything about punishment, but I think now they ought to be punished, because Larry Merriman didn't do that without the approval of his client. I can tell you that.... A badge of how desperate Circle Y of Yoakum is, is the actions of their lawyer in the closing argument, and that's why he didn't want your decision based on the actions

of the lawyers. But remember, the lawyer is the agent for the client and does what he does as the agent for the client and with the approval of the client, and so I think you can take it into account. And they didn't do it to you once, they did it to you twice.

This other little note he waved up here, he said it's from Schumpert Hospital, and does anybody see Schumpert Hospital's letterhead on that anywhere?

[DEFENSE COUNSEL]: Your Honor, we object. We have the two exhibits which are in evidence from which they've both come, Defendant's Exhibit Number 4, which was on his desk, Defendant's Exhibit Number 3. If you'd like to see them, sir.

[PLAINTIFF'S COUNSEL]: Your Honor—

THE COURT: Overrule the objection at this time, and you may go ahead with your—

[DEFENSE COUNSEL]: They're both in evidence, Your Honor. We want the Jury to be instructed of that.

THE COURT: You didn't show them to the Court when I asked to see them, so I don't know. The Jury will have the exhibits in the jury room with them.

[PLAINTIFF'S COUNSEL]: They've got something they've got marked now and they're sticking them over there on the table. I don't know what they are.

[DEFENSE COUNSEL]: Your Honor, we object to that.

THE COURT: Sustained.

Circle Y contends that the jury returned an excessive award, unsupported by the evidence, because of Blevins' prejudicial argument.

■ To establish that improper jury argument caused harmful error Circle Y must demonstrate that the comments were error; that they were not invited or provoked; that error was preserved; that the error was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge; and that the argument by its nature, degree and extent constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d

835, 839 (Tex.1979). We must examine all of the evidence and evaluate the whole case, from voir dire to closing argument, to determine whether Circle Y showed a greater probability that the improper argument caused harm than that the verdict was grounded on the evidence. *Id.* at 840.

■ Jury argument must be confined strictly to the evidence and the argument of opposing counsel. Criticism, censure, or abuse of counsel are not permitted. Appeals to passion and prejudice are improper, as are calls to punish a litigant for the acts of counsel. Charges that opposing counsel manufactured evidence, suborned perjury, or was untruthful are highly improper and are generally considered to be incurable. *See Southern Pacific Company v. Hubbard*, 156 Tex. 525, 297 S.W.2d 120 (1956); *Lumbermen's Lloyds v. Loper*, 153 Tex. 404, 269 S.W.2d 367 (1954); *American Petrofina, Inc. v. PPG Industries, Inc.*, 679 S.W.2d 740 (Tex.App.—Fort Worth 1984, writ dism'd by agr.); *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Jones*, 361 S.W.2d 725 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.); *Cross v. Houston Belt & Terminal Railway Co.*, 351 S.W.2d 84 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Butler*, 287 S.W.2d 198 (Tex. Civ.App.—Fort Worth 1956, writ ref'd n.r.e.); *Stephens v. Smith*, 208 S.W.2d 689 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.). Moreover, such comments violate the Rules of Civil Procedure and the Canons of Ethics. TEX.R.CIV.P. 269; SUPREME COURT OF TEXAS, STATE BAR RULES art. X, § 9 (Texas Disciplinary Rules of Professional Conduct) Rule 3.04 (1990); *see Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 841. As stated by Justice Steakly in *Standard Fire Ins. Co. v. Reese*,

> There can hardly be an accusation of more severity and seriousness than the charge that opposing counsel participated in a plot … to manufacture … testimony….

*Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 841 (Steakly, J., dissenting).

The comments here clearly charged defense counsel with manufacturing evidence. *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d at 848; *Cross v. Houston Belt & Terminal Railway Co.*, 351 S.W.2d 84. The comments were aggravated by the fact that the matters referred to by defense counsel *were in evidence.* Even if they had not been in evidence, the statements charging defense counsel with manufacturing evidence were intemperate, improper, and inflammatory, and were wholly without support in the evidence. While the trial judge sustained one objection to a "side bar remark," he overruled other objections to the argument, and his statement to defense counsel that "[y]ou didn't show them to the Court when I asked to see them," although well-meaning and innocently made, only served to reinforce the impression given to the jury that defense counsel had manufactured evidence. Additionally, plaintiff's counsel continued the argument, insisting that defense counsel's fraudulent acts were done with full knowledge and approval of Circle Y, and urging that the jury "punish" Circle Y for those actions.

Although the trial judge later determined that the questioned exhibits were in evidence and allowed them to go to the jury in its deliberations, we do not believe that removed the harm caused by the improper jury argument. There were multitudes of exhibits in the case, and it is not likely that simply allowing two more in the jury room adequately apprised the jurors that defense counsel had not tried to deceive them. Certainly it did not remove the prejudice caused by the manufacturing evidence charge, *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d at 848. We therefore conclude that the argument was improper, inflammatory, and incurable. *Cross v. Houston Belt & Terminal Railway Co.*, 351 S.W.2d at 87.

We next determine whether the improper argument constituted harmful error. This determination requires us to confront Circle Y's evidentiary challenges. As noted above, the court's comments and his allowing Blevins' counsel to urge that the jury punish Circle Y because of its counsel's

actions lent weight to the improper argument because a jury is presumed to believe the trial court's rulings are correct. *World Wide Tire Co. v. Brown*, 644 S.W.2d 144, 146 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). In light of our determination that the evidence is insufficient to support this award, we conclude that this improper argument caused the rendition of an improper verdict. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 840.

The damage issue contained four elements: physical pain and mental anguish, physical impairment, medical care, and loss of earning capacity. Amounts for total past and total future damages were to be determined separately. Circle Y did not request separate submission of the other damage elements. The award contained $720,000.00 for past actual damages and $600,000.00 for future actual damages. This award was more than double the $650,000.00 Blevins pleaded.

There is no evidence of lost earnings, other than notations on medical records that Blevins worked at Federal Express. Blevins missed about seven months of work, but there is no evidence of a wage rate. As to future lost earning capacity, there is evidence that Blevins has a ten percent disability of her left arm, but that it is not necessarily related to her work. She is restricted from lifting more than seventy pounds, which could impact her future earning capacity. Blevins' chiropractor, Dr. Brown, offered no evidence to support lost earning capacity. He authorized her to barrel race and to do anything at work that didn't bother her. Further, Blevins resumed full-time work less than a year after her accident. She resumed barrel racing activities at about the same time.

As for medical care, Circle Y concedes that the medical records support about $22,000.00 in past actual expenses. Dr. Brown testified that Blevins should see him for *at least* four more months. He also testified that weekly visits for four months would total no more than $1,000.00. This evidence supports an award for approximately $23,000.00 for past and future medical expenses.

Considering both past and future lost earnings and medical expenses, it is obvious that the great majority of the $1,320,000.00 award, if proper, would have to be for physical pain, mental anguish, and physical impairment.

There was testimony as to the severity of Blevins' fall and its immediate effect. The effects included slurred speech, a broken shoulder, a broken hand, bruised kidney, and contusions. Dr. Brown, the chiropractor, testified to Blevins' recurring pain, spasms, tenderness, and "pin-like pains." He testified to nerve damage to Blevins' arm and shoulder that caused her left arm to shrink. He said that x-rays revealed a calcified vertebra that would cause treatable, but incurable, pain.

Dr. Bundrich, an orthopedic surgeon, testified by deposition that he performed surgery on Blevins' hand and shoulder. He testified that her range of motion was restricted after surgery and that surgery had not made her shoulder normal. He also noted that scar tissue remained.

Obviously, Blevins suffered some pain and mental anguish because of the trauma of the fall and the surgeries on her hand and shoulder. She continues to suffer some pain. However, there was evidence that unrelated injuries and accidents were at least partly to blame for her pain. There was evidence of prior riding-related injuries to her ankle, leg, face, and hand. There was also evidence of her family's history of cancer and emotional problems. She had surgery to remove a lymph node from her neck, and she was distressed because she thought she had breast cancer. Dr. Brown testified to Blevins' significant improvement, past and expected.

The jury was instructed not to include any amount for any condition existing before the accident, except if aggravated by the accident. While the jury presumably abided by this instruction, *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 666 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.), the evidence is not sufficient to support a verdict of this magnitude. We can only conclude that the jury's award of damages was the result of passion and prejudice rather than an objective assessment of the evidence. Thus, the probability that the improper argument caused harm is greater than the probability that the verdict was based on the evidence. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d at 840.

Blevins argues that the jury's award of only $20,000.00 punitive damages shows that it did not heed counsel's argument to punish Circle Y for the alleged improper acts of its counsel. However, a review of the evidence convinces us that the jury used the compensatory award to effect its "punishment," since the award is clearly not supported by factual evidence.

It may be argued that we should order a remittitur of damages rather than order a new trial because of the prejudicial argument. We find, however, that the essential fairness of the trial was so impaired by the improper jury argument and the circumstances surrounding it that only a new trial will afford the parties substantial justice.

In view of our disposition of the foregoing points, it is not necessary that we address the other points. The judgment is reversed and the cause is remanded for a new trial.