Bruce William BYAS, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–94–113–CR.

Court of Appeals of Texas,
Fort Worth.

June 8, 1995.

Rehearing Overruled Oct. 5, 1995.

Gary L. Medlin, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall, Charles M. Mallin, M. Jason Ankele, Tim Bednarz, David Hudson, Asst. Dist. Attys., Fort Worth, for appellee.

Before DAUPHINOT, DAY and LIVINGSTON, JJ.

OPINION

PER CURIAM.

Appellant, Bruce William Byas, Jr., was convicted by a jury of aggravated robbery with a deadly weapon. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon 1994). The jury assessed punishment at fifteen years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Appellant urges in two points of error that the trial court erred: (1) in failing to grant defense counsel's motion for mistrial; and (2) in overruling defense counsel's motion to suppress the victim's pretrial identification of Appellant. We find Appellant's first point of error has merit and reverse the judgment of the trial court and remand for a new trial.

On September 25, 1992, Dimitri Angelopoulos and his wife, Anan, were working at the BestMart convenience store. Two men

entered the store at 10:15 p.m. and picked up some chips and a coke. One of the men asked Ms. Angelopoulos if she had any other type of food. As Ms. Angelopoulos directed him to a food window, the other man, later identified as Appellant, pulled out a gun. Appellant pointed the gun at Mr. Angelopoulos and said, "I have a gun, this is a stick up. I've been watching you, and I know that you have money. Give me the money." Mr. Angelopoulos gave Appellant all of the money in the cash drawer, and the two men fled the store.

Three weeks later, Appellant returned to the Angelopoulos' store, at which time Mr. Angelopoulos apprehended him. Appellant was subsequently convicted of aggravated robbery.

Appellant's first point of error contends that the curative instruction to disregard the State's personal attack on defense counsel during final jury argument was insufficient to cure the error. The complained of argument includes:

> [PROSECUTOR]: Members of the jury, what I've seen go on from the start of voir dire up until this point is starting to cause me great concern. I've seen [defense counsel] act as a *very slick attorney* from voir dire up all the way up—[Emphasis added.]

■ Proper jury argument must fall into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. *Long v. State,* 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Gaddis v. State,* 753 S.W.2d 396, 397 (Tex. Crim.App.1988); *Cannon v. State,* 668 S.W.2d 401, 404 (Tex.Crim.App.1984).

■ In the instant case, Appellant objected to the improper comment by the State's attorney and then asked the judge to instruct the jury to disregard. The judge told the jury to disregard. While in most cases an instruction by the judge is sufficient to cure the improper argument, there are some arguments that are so egregious that even a proper instruction cannot cure error. *See Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753 (Tex.App.—Texarkana 1992, writ denied) (unsupported allegation that opposing counsel manufactured evidence was considered an incurable argument).

The State asserts that the statement was in response to the defense's strategy of attacking the police investigation. It is the duty of defense counsel to challenge the evidence. An attack on the police investigation does not invite a personal attack on the character of defense counsel. The Court of Criminal Appeals has looked with special disfavor on this type of argument. *See Gomez v. State,* 704 S.W.2d 770, 771 (Tex.Crim.App. 1985); *Fuentes v. State,* 664 S.W.2d 333 (Tex. Crim.App. [Panel Op.] 1984).

The prosecutor's statement that defense counsel is a "slick attorney" was not only irrelevant to the guilt or innocence of Appellant, but it implied that the prosecutor's credibility exceeded that of defense counsel because the prosecutor's ethical and moral standards were supposedly higher. This court believes that such unwarranted personal attacks against opposing counsel constitute inappropriate conduct in any court in the State of Texas. Furthermore, we believe that such unwarranted personal attacks on opposing counsel in court not only provide a disservice to our citizens, but are demeaning to our profession and should be condemned. *See* The Texas Lawyer's Creed—A Mandate For Professionalism (adopted November 7, 1989).[1]

Having found these comments to be improper, we must now determine if the error is harmless. Appellate review of error in criminal cases usually involves a two-step

---

1. This creed was adopted by the Supreme Court of Texas and the Court of Criminal Appeals as an aspiration of what our profession should be. The creed provides in part:

> Compliance with the rules depends primarily upon understanding and voluntary compliance, secondarily upon re-enforcement by peer pressure and public opinion, and finally when necessary by enforcement by the courts through their inherent powers and rules already in existence.

Texas Lawyer's Creed—A Mandate for Professionalism—"Order of Adoption" 783 S.W.2d XXXIII.

process. *Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim.App.1987) (op. on reh'g). In the first step we have determined that error occurred in the trial. In the second step, we must determine whether the error calls for reversal of the conviction, applying TEX. R.APP.P. 81(b)(2):

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

*Id.*

Our harmless error analysis must focus upon the error, rather than upon the propriety of the outcome of the trial; trace its probable impact upon the jury, and determine whether it contributed to the conviction or punishment. *Harris v. State*, 790 S.W.2d 568, 585–87 (Tex.Crim.App.1989). An appeals court should concentrate on the integrity of the process leading to the conviction and whether the trial was a fair one. *Id.* We consider the source and nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight a juror would probably place upon the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587. This requires an evaluation of the entire record in a neutral, impartial and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586.

 There is no formula by which we can perform a harmless error analysis, but generally, we first isolate the error and its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Id.* at 587–88. If we are unable to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we must reverse the conviction. *Id.* at 584.

While there is sufficient evidence upon which to uphold Appellant's conviction, we cannot say, in light of the evidence, that the error was harmless beyond a reasonable doubt. Nor can we say beyond a reasonable doubt that declaring the error harmless would not encourage the State to repeat the error.[2]

We find the trial court's instruction to disregard the improper jury argument was insufficient to cure the error. We sustain Appellant's first point of error. Having sustained Appellant's first point of error, we need not address his second point of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

---

**2.** In no fewer than eight opinions, six unpublished and two published, lawyers have been cited for improper attacks on the character of opposing counsel, yet such improper arguments continue to be made. We do not cite these opinions as authority but, rather, to show why the fifth prong of the *Harris* analysis is especially pertinent to the facts before us. We are not saying the comments complained of would al-

ways require reversal. The jury argument is improper and lawyers have employed such improper argument on too many occasions. The courts have repeatedly admonished lawyers who engage in personal attacks on opposing counsel. The admonishments have been ignored. Perhaps stronger sanctions will be heeded.